SAMUEL H. PARKER & others *vs.* JAMES NIGHTINGALE & another.

If the owners of a piece of land lay it out into house lots, and orally agree among themselves that the same shall be occupied exclusively for dwelling-houses, and accordingly give deeds thereof upon condition that no buildings shall be erected thereon except for dwelling-houses only, one who takes such a deed is bound in equity by the condition; and purchasers of others of the lots, whose estates will be injured by his violation of the condition, may maintain a bill in equity, without joining their grantors as plaintiffs, against him, (if he has declined to join as a plaintiff,) and his tenant, to prevent the conversion of a dwelling-house upon his lot into a public eating-house.

BILL IN EQUITY, setting forth that before the erection of houses upon Hayward Place in the city of Boston, the land upon and adjoining the same was owned by Lemuel Hayward; that upon his decease it was arranged among his heirs that the said land should be laid out into a court or street, to be occupied exclusively for dwelling-houses; that for this purpose the land was surveyed and laid out into a court, with house lots of convenient size, and numbered, following the course of the court; that this agreement was made to facilitate the sale and enhance the value of the lots, by rendering them quiet and desirable places of abode; that it was further agreed among the heirs, and those who

represented such as were not *sui juris,* that in conveying the lots the grantees should be laid under an express obligation or duty, by way of condition or limitation of the use thereof, that "no other building, except one of brick or stone, of not less than three stories in height, and for a dwelling-house only," should be erected by them; that the deeds of all the lots were made upon this condition, and the same was either repeated or referred to in the subsequent conveyances thereof; that lot No. 2 was set to Charles Hayward, one of the heirs, and, being under the control of trustees, was by them conveyed in 1822, upon condition "that no other building shall be erected or built on the lot except one of brick or stone, not less than three stories in height, and for a dwelling-house only," and the same came by intermediate conveyances to James Nightingale, one of the defendants, who now owns the same; that early in 1862 said Nightingale leased said premises, consisting of a three story dwelling-house, and convenient and comfortable accessory erections, to Frederick Loeber, the other defendant; that the plaintiffs believe and charge the fact to be that the said lease contains the same condition above recited, but they also insist that said Loeber is bound by the conditions of the tenure of his lessor, whether he had actual knowledge thereof or not; that said Loeber has taken steps to convert said dwelling-house into a restaurant or eating-house; that the owners of other dwelling-houses in Hayward Place thereupon requested the defendant Nightingale to interfere, and stop his tenant Loeber from such unlawful perversion and misuse of the premises; that Nightingale, being threatened with a suit by Loeber in case of such interference, thereupon said that "as he could not escape a lawsuit by any course which lay open before him, he might as well have the matter settled by the suit of the proprietors aforesaid, as by the suit of Loeber;" that Loeber has since used the place as a restaurant, having large numbers of noisy and boisterous persons in and about the same, and has thus rendered Hayward Place almost unfit for quiet and comfortable residences; and that the plaintiff Parker, in behalf of himself and eleven others who were named, being each the proprietor of a lot on Hayward Place, with a dwelling-house

thereon of the description above set forth, has brought this bill. The titles of some of the plaintiffs were set forth in detail. The prayer was for an injunction against such use of the premises, and for other and further relief.

The defendants filed a general demurrer, and the case was thereupon reserved for the determination of the whole court.

*C. W. Storey & S. Wells, Jr.*, for the defendants. 1. The heirs of Lemuel Hayward should have been joined as plaintiffs. 2 The agreement among these heirs was not in writing, and the defendants had no notice, and are not bound by it. Gen. Sts. *c.* 89, § 2. *Wood* v. *Leadbitter*, 13 M. & W. 842. 3. There is nothing in Nightingale's deed showing that the condition was intended to benefit any adjoining estate. *Badger* v. *Boardman*, 16 Gray, . *Schreiber* v. *Creed*, 10 Sim. 9. 4. The plaintiffs were guilty of laches in bringing their bill. *Whitney* v. *Union Railway*, 11 Gray, . *Bedford* v. *British Museum*, 2 Myl. & K. 552. 5. Nightingale, having never broken the condition, is improperly joined as a defendant. *Indian Orchard Canal Co.* v. *Sikes*, 8 Gray, 562. 6. If properly joined, the bill is multifarious. 7 The condition should be strictly construed. *Proprietors of Canal Bridge* v. *Methodist Religious Society*, 13 Met. 349. *Merrifield* v. *Cobleigh*, 4 Cush. 178. *Hadley* v. *Hadley Manuf. Co.* 4 Gray, 140. 4 Kent Com. (6th ed.) 129. Shep. Touchstone, 133. 8. There has been no breach of the condition. Com. Dig. Condition, G. 14. *French* v. *Quincy*, 3 Allen, 9. *Beatty* v. *Kurtz*, 2 Pet. 566. *Jackson* v. *Pike*, 9 Cow. 72.

*I. F. Redfield & W. A. Herrick*, for the plaintiffs. The plaintiffs all have a common interest in the question, and may well maintain their bill jointly. *Dent* v. *Turpin*, 7 Jur. (N. S.) 673. *Watertown* v. *White*, 4 Paige, 510, 515. *Cady* v. *Conger*, 19 N. Y. 256. *Adair* v. *New River Co.* 11 Ves. 429, 444. *Hoggart* v. *Cutts*, Craig & Phillips, 204. *Campbell* v. *Mackay*, 1 Myl. & C. 603. *Brinkerhoff* v. *Brown*, 6 Johns. Ch. 150. *Kensington* v. *White*, 3 Price, 164. Story Eq. Pl. §§ 121, 284, 286, 287, 537 *a*. Upon the merits, the bill presents a proper case for the interference of a court of equity. *Smyles* v. *Hastings*, 22 N. Y. 217. *Stuyvesant* v. *Mayor, &c. of New York*, 11 Paige, 414

*Coles* v. *Sims*, 5 De G., Macn. & Gord. 1. *Hodson* v. *Coppard*, 7 Jur. (N. S.) 11. *Bleeker* v. *Bingham*, 3 Paige, 246. *Hills* v. *Miller*, Ib. 254. *Whatman* v. *Gibson*, 9 Sim. 207. *Tulk* v. *Moxhay*, 11 Beav. 571, and 2 Phillips R. 774. *Barrow* v. *Richard*, 8 Paige, 351. *Whitney* v. *Union Railway*, 11 Gray, . *Patching* v. *Dubbins*, Kay, 1. *Piggott* v. *Stratton*, De G., Fisher & Jones, 33. *Mann* v. *Stephens*, 15 Sim. 377. *Tallmadge* v. *East River Bank*, 2 Duer, 614. *Maxwell* v. *East River Bank*, 3 Bosw. 124. *Scott* v. *Burton*, 2 Ashm. (Penn.) 312.

BIGELOW, C. J. A court of chancery will recognize and enforce agreements concerning the occupation and mode of use of real estate, although they are not expressed with technical accuracy, as exceptions or reservations out of a grant not binding as covenants real running with the land. Nor is it at all material that such stipulations should be binding at law, or that any privity of estate should subsist between parties in order to render them obligatory, and to warrant equitable relief in case of their infraction. A covenant, though in gross at law, may nevertheless be binding in equity, even to the extent of fastening a servitude or easement on real property, or of securing to the owner of one parcel of land a privilege, or, as it is sometimes called, " a right to an amenity " in the use of an adjoining parcel, by which his own estate may be enhanced in value or rendered more agreeable as a place of residence. Restrictions and limitations which may be put on property by means of such stipulations derive their validity from the right which every owner of the fee has to dispose of his estate either absolutely or by a qualified grant, or to regulate the manner in which it shall be used and occupied. So long as he retains the title in himself, his covenants and agreements respecting the use and enjoyment of his estate will be binding on him personally, and can be specifically enforced in equity. When he disposes of it by grant or otherwise, those who take under him cannot equitably refuse to fulfil stipulations concerning the premises of which they had notice. It is upon this ground that courts of equity will afford relief to parties aggrieved by the neglect or omission to comply with agreements respecting real estate after

it has passed by mesne conveyances out of the hands of those who were parties to the original contract. A purchaser of land with notice of a right or interest in it existing only by agreement with his vendor, is bound to do that which his grantor had agreed to perform, because it would be unconscientious and inequitable for him to violate or disregard the valid agreements of the vendor in regard to the estate, of which he had notice when he became the purchaser. In such cases it is true that the aggrieved party can often have no remedy at law. There may be neither privity of estate nor privity of contract between himself and those who attempt to appropriate property in contravention of the use or mode of enjoyment impressed upon it by the agreement of their grantor, and with notice of which they took the estate from him. But it is none the less contrary to equity that those to whom the estate comes, with notice of the rights of another respecting it, should wilfully disregard them, and in the absence of any remedy at law the stronger is the necessity of affording in such cases equitable relief, if it can be given consistently with public policy, and without violating any absolute rule of law. These principles were fully explained and applied by this court in the recent case of *Whitney* v. *Union Railway*, 11 Gray,    , and are constantly acted upon by the court of chancery in England and by the courts of this country exercising equity powers. *Mann* v. *Stephens*, 15 Sim. 377. *Tulk* v. *Moxhay*, 11 Beav. 571, and 2 Phillips R. 774, and 1 Hall & Twells, 105. *Patching* v. *Dubbins*, Kay, 1. *Coles* v. *Sims*, 5 De G., Macn. & Gord. 1, and 1 Kay, 56. *Piggott* v. *Stratton*, De G., Fisher & Jones, 33.

Applying the principles established by these authorities to the case stated in the bill, there can be no room for doubt that the plaintiffs are entitled to equitable relief. The defendants, Nightingale and Loeber, took the estate in which they are respectively interested, the former as owner and the latter as lessee, subject to a restriction by which the use of the building erected on the premises was to be limited " to a dwelling-house only." Of the restriction both had notice. It is inserted in clear and explicit terms in the deed to Nightingale, and also, as the bill alleges, in

the lease under which Loeber occupies the premises. By accepting the deed and receiving the lease they both became bound to comply with the restriction, and liable in equity and good conscience to a substantial observance of it towards those who are now owners of the estates for whose benefit the restriction was originally designed.

Nor can it be justly said that the enforcement of this stipulation tends in any degree to contravene that provision of the statute, Gen. Sts. *c.* 89, § 2, which enacts that no estate or interest in lands shall be created or conveyed without an instrument in writing signed by the grantor. By the deed under which the defendants claim title, the entire and absolute interest in the estate did not pass to the grantee. The restriction on the use of the premises contained in the deed operated as a qualification of the fee, and was in the nature of a reservation or exception out of the estate granted. Thus there was an interest or right created by the deed itself. According to the allegations in the bill, on tracing the title to its source, a like restriction was contained in the original grant of the parcel of land in controversy, as well as in contemporaneous grants of all the other parcels now forming the street or court called Hayward Place, and which originally consisted of one tract of land, the entire fee of which was vested in a single person, from whom all the present owners of the different parcels derived their titles. It is therefore clear that the right or interest which this clause in the several deeds of the parties was designed to recognize and establish whatever may be its nature, was created in conformity to law by instruments in writing signed by the grantors.

This brings us to a consideration of the most important and difficult question raised by the demurrer, which is, whether the present plaintiffs, or any of them, set forth in the bill any such claim or title as will enable them to enforce this restriction on the use and occupation of the premises in controversy as against the defendants. A satisfactory answer to this inquiry will, we think, be found in the fact, which is sufficiently apparent from the allegations in the bill, that the purpose intended to be accomplished by the restrictions inserted in the deeds of the estate

now owned and occupied by the defendants was for the benefit and advantage of other owners of lots situated on the same street or court. Indeed it could have been designed for no other purpose. If we lay aside all the facts alleged in the bill which rest in parol evidence only, and look exclusively to the history of the title as shown by the deeds, the conclusion is unavoidable that the original grantors, in whom the title to the entire tract now owned by the several parties to this suit in different parcels was vested, intended, by limiting the use of the several lots and prescribing the kind of structures which are to be erected by the grantees thereon, to establish a permanent regulation and restriction by which to prevent each parcel from being appropriated to a purpose which might enure to the injury of any other parcel, or render it less agreeable as a place of residence. By excluding all erections for the purposes of trade, and appropriating each lot to a prescribed use as a dwelling-house, the entire neighborhood comprised within the limits of the original tract laid out for a street or court was secured against annoyances arising from occupations which would impair the value of the several lots as places of residence. Thus a right or privilege or amenity in each lot was permanently secured to the owners of all the other lots. While each was restrained in the use of his own estate, he had the benefit of a like restraint imposed on all the other estates. That this restriction or limitation was not imposed by the original grantors for their own benefit or advantage, and cannot be considered as personal to them, is manifest from the fact that they retained no right or interest in any of the parcels of land. The whole tract was conveyed by them. It does not appear that they retained the occupancy or ownership of any of the lots or of any adjoining estate, by means of which they could derive any personal benefit or advantage from the restrictions. But even if they had, it would not change the result; because, by uniting in a scheme or joint enterprise for the division of the estate into lots or parcels on a street or court laid out by them, and annexing to the conveyance of each lot a restriction on its use, by the observance of which each parcel would be occupied for a similar purpose with every other, the

legal inference is, in the absence of any evidence to the contrary, that the intention was to secure to each estate the benefit or advantage which might arise from the specific mode in which the adjoining premises were to be improved and occupied. The effect of such a restriction, inserted in contemporaneous conveyances of the several parcels under the circumstances alleged in the bill, was to confer on each owner a right or interest in the nature of a servitude in all the lots situated on the same street which were conveyed subject to the restriction. Thus it entered into the consideration which each purchaser paid for his land, either by enhancing its price in view of the benefit secured to him in the restraint imposed on adjoining owners, or by lessening its value in consequence of the limitation affixed to its use. In this view of the case, it is quite immaterial to determine the precise legal nature or quality of the restriction in question. In strictness, perhaps, the right or interest created by the restrictions, being a qualification of the fee, did not pass out of the original grantors, and now remains vested in them or their heirs. But if so, they hold it only as a dry trust, in which they have no beneficial use or enjoyment, the entire usufruct being in their grantees and their assigns now holding the estates, for whose use and benefit it was intended. Such being the case, then the latter are proper parties to enforce the restriction ; and the former, not having any present interest in it, need not be parties to the proceeding. The same result would follow, if the restriction be construed as in the nature of a covenant by each grantee with the other owners of estates on the court, or others holding under a similar restriction. In either view, the present plaintiffs, having a common interest in the subject matter of the bill, and a right to ask for the same remedy against the defendants, are rightly joined as parties. Story Eq. Pl. §§ 121, 126. *Adair* v. *New River Co.* 11 Ves. 429, 444. *Gray* v. *Chaplin,* 2 Sim. & Stu. 267.

The case of *Badger* v. *Boardman,* 16 Gray, , cited by the defendants, is unlike the case at bar. There was nothing in that case to show that the restriction on the use of certain premises was designed for the benefit of the owner of the estate who sought to enforce it. On the contrary, there was reason to

believe that the restriction was inserted in the deed with a view to confer a privilege or easement exclusively upon another adjoining estate belonging to the grantor.

Looking at the merits of the case as disclosed by the bill, it seems to us that the plaintiffs are entitled to maintain their bill to enforce the restriction by enjoining the use of the premises for the purposes for which they are alleged to be occupied by the defendant Loeber.

A technical objection raised by the demurrer remains to be disposed of. It is that the defendant Nightingale is improperly joined as defendant. But we think the objection cannot prevail. He certainly has a direct interest in the suit, inasmuch as the decree will affect the title to his estate, and the right to its unlimited use and enjoyment by him. He could not well be joined as plaintiff, after his statement to the plaintiffs, set out in the bill, that as he could not avoid a lawsuit he might as well have the matter settled by a suit of the proprietors against his tenant Loeber. This was equivalent to a refusal on his part to become a party plaintiff in the present suit, and is sufficient to justify the plaintiffs in joining him as a defendant.

It may be well to add that while a court of equity will carry into effect agreements or restrictions similar to those set forth in the bill, in cases where there is nothing shown to render their enforcement inequitable, circumstances may exist which might warrant a refusal to grant equitable relief even where it was made to appear that there had been a failure to use and occupy premises in accordance with the terms of the deed by which they were conveyed. If, for instance, it was shown that one or two owners of estates were insisting on the observance of restrictions and limitations contrary to the interest and wishes of a large number of proprietors having similar rights and interests, by which great pecuniary loss would be inflicted on them, or a great public improvement be prevented, a court of equity might well hesitate to use its powers to enforce a specific performance or restrain a breach of the restriction. The defendants in the present case do not pretend that they have any such equity under the allegations of the bill. *Demurrer overruled.*