DAVID KORN, Appellant, v. GEORGINE CAMPBELL, Respondent.

1. REAL PROPERTY — RESTRICTIVE COVENANT — WHEN BENEFICIAL TO GRANTOR AND NOT TO LAND BURDENED THEREWITH. Where the whole of a plot of land was conveyed subject to a covenant, restricting its use to the erection of private dwellings, and there is no evidence that the land was to be divided, it must be held that the covenant was exacted for the benefit of the grantor and his remaining lands, if he had any. While the covenant might be enforced by the grantor, or his assigns, as against the grantee or any one deriving title from him, it did not benefit any part of the land burdened with it.

2. SAME — RESTRICTIVE COVENANT IN DEED CONVEYING PLOT OF LAND AFTERWARD DIVIDED INTO BUILDING LOTS — WHEN NOT ENFORCEABLE BETWEEN SUBSEQUENT LOT OWNERS. Where a subsequent purchaser of the whole plot, who took title thereto subject to the restrictive covenant, divided it into lots, mortgaged them separately and conveyed them to various persons, without mention of the covenant in either the mortgages or the deeds, and the lots were afterward sold upon foreclosure of the mortgages under referee's deeds, which embodied no part of the restrictive covenant or any reference thereto, later owners of the lots, holding title by mesne conveyances, without restrictions, subsequent to the referee's deeds, cannot enforce the covenant as between themselves. Having no title except that derived from a common grantor, who divided the land into lots, mortgaged and sold them without restrictions, the present owners of the lots are under no covenant obligations to each other.

3. SAME — ACTION TO ENFORCE COVENANT — WHEN IT CANNOT BE MAINTAINED. Where, therefore, one of such owners proposes to change the private residence on his lot into a building for business purposes, an

adjoining owner, whose title is derived from the same source, cannot maintain an action for an injunction restraining such change as a viola· tion of the restrictive covenant.

*Korn* v. *Campbell,* 119 App. Div. 401, affirmed.

(Argued June 11, 1908; decided September 29, 1908.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 17, 1907, reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and dismissing the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Louis Marshall, Albert T. Scharps* and *James Frank* for appellant.   This case comes within the equitable doctrine that a court of chancery will enforce a restrictive covenant imposed by the grantor of land upon property conveyed by him which inures to the benefit of and is obligatory upon all subsequent grantees having notice, actual or constructive, of the restriction, whether the covenant runs with the land, or is cognizable at law, or not; and that once created it is indestructible otherwise than by the act of all parties, directly or indirectly interested in its enforcement. (*Gibert* v. *Peteler,* 38 N. Y. 165 ; *Acer* v. *Westcott,* 46 N. Y. 384 ; *Trustees of Columbia College* v. *Thacher,* 87 N. Y. 311 ; *McPherson* v. *Rollins,* 107 N. Y. 316 ; *Simmons* v. *Crisfield,* 123 App. Div. 201 ; *Hartley* v. *Harrison,* 24 N. Y. 170 ; *Freeman* v. *Auld,* 44 N. Y. 50 ; *Horton* v. *Davis,* 76 N. Y. 495 ; *Hop·kins* v. *Wahle,* 81 N. Y. 77 ; *McConihe* v. *Fales,* 107 N. Y. 404 ; *Raynor* v. *Lyon,* 46 Hun, 231.)   The restriction, as defined in the Lenox deed, was not extinguished by any merger of the so-called dominant and servient estate. (*Fritz* v. *Tompkins,* 168 N. Y. 532 ; *Wettlaufer* v. *Ames,* 133 Mich. 201 ; *Nicholas* v. *Chamberlain,* Cro. Jac. 121; *Kieffer* v. *Imhoff,* 26 Penn. St. 438 ; *Smith* v. *Smith,* 120 App. Div. 278 ; *Gibson* v. *Crehore,* 3 Pick. 482 ; *James* v. *Morey,* 2 Cow.

285 ; *Clift* v. *White*, 12 N. Y. 535 ; *Sheldon* v. *Edwards*, 35 N. Y. 285; *Smith* v. *Roberts*, 91 N. Y. 470; *Curtis* v. *Moore*, 152 N. Y. 165 ; *Raynor* v. *Lyon*, 46 Hun, 229.)

*David B. Ogden* for respondent. The title of the defend-ant to her house is free from any restriction enforceable by the plaintiff. (*Belmont* v. *Coman*, 22 N. Y. 438; *Dingle-dein* v. *T. A. R. R. Co.*, 37 N. Y. 575 ; *E. L. A. Society* v. *Brennan*, 148 N. Y. 661 ; *Barney* v. *Everard*, 32 Misc. Rep. 648 ; *Brouwer* v. *Jones*, 23 Barb. 153 ; *Raynor* v. *Lyon*, 46 Hun, 227 ; *Tulk* v. *Moxhay*, 2 Phillips Ch. 774 ; *Whitney* v. *U. Ry. Co.*, 11 Gray, 363 ; *Hano* v. *Bigelow*, 155 Mass. 341 ; *De Gray* v. *M., etc., Co.*, 50 N. J. Eq. 329.)

WERNER, J. The plaintiff and the defendant are the respective owners of lands which adjoin each other, the titles to which were derived from a common source. The defend-ant's lot is on the northwest corner of Madison avenue and Seventy-third street in the borough of Manhattan, city of New York, having a frontage of eighteen (18) feet on the street, and a length of eighty (80) feet on the avenue. The plaintiff's lot is on the avenue immediately north of the defendant's, and has a frontage of twenty-two (22) feet and two (2) inches, with a depth of ninety-two (92) feet. Each of these lots has upon it the typical dwelling house characteristic of that section of the city.

This action is brought to restrain the defendant from mak-ing alterations in the building upon his lot which are designed to render it convenient and suitable for certain business pur-poses, and the plaintiff predicates his right to this relief upon a restrictive covenant which, among other things, recites that the premises out of which the respective lots of the plaintiff and the defendant have been carved shall " be used for the erection of first class private residences only."

The question is whether that covenant can be enforced by the plaintiff against the defendant. At Special Term it was held that it could. At the Appellate Division a contrary

decision was reached, although by a divided court, and the case is now before this court upon plaintiff's appeal.

Since everything depends upon the history of the titles and the covenant referred to, a short statement of the salient facts is necessary to a proper understanding of the precise question involved. On the 10th day of August, 1870, James Lenox conveyed to William Lalor a plot of land which had a frontage of one hundred and two feet and two inches on the west side of Madison avenue, and a frontage of one hundred and ninety-five feet on the north side of Seventy-third street. The deed by which this conveyance was made contained the covenant above referred to. This covenant, after prohibiting upon these premises many noxious and objectionable trades, occupations and structures, provided that the grantee " will use or suffer the said premises to be used for the erection of first class private residences only." So far as the record discloses, Lenox owned no other lands in that immediate neighborhood, and the lots now owned by the parties to this action are embraced in the tract thus conveyed. On the 12th day of August, 1870, Lalor and wife conveyed to James H. Coleman an undivided one-third interest in the tract of land above described, but the deed contained no reference to the covenant set forth in the deed from Lenox to Lalor. On July 1st, 1871, Lalor and Coleman, with their respective wives, conveyed the whole tract to James E. Coburn by a full covenant warranty deed, which referred to the covenant in the deed from Lenox to Lalor as follows : " Subject to the conditions, covenants and restrictions against nuisances and buildings contained in deed of James Lenox of the above described premises." Coincident with the delivery of this deed to Coburn, he executed to the North American Life Insurance Company eleven separate mortgages; one upon each of eleven lots into which he had divided the whole tract thus derived from Lalor and Coleman. Neither of these mortgages contained any reference to the restrictive covenant in the deed from Lenox. Upon these eleven lots Coburn erected private dwelling houses, which were disposed of to

various persons by deeds in which there was no mention of that covenant. In 1879 the mortgages given by Coburn to the insurance company were foreclosed. The premises now owned by the plaintiff then belonged to Mary H. Moore, and title to the lot now owned by the defendant was then in Artemas H. Holmes, both of these grantees holding under deeds subsequent in date to the mortgage above referred to, and both having derived their titles through Coburn by deeds which did not refer to the restrictive covenant in the original deed from Lenox. Thus stood the titles to the premises now owned by the plaintiff and the defendant, respectively, when the mortgages to the insurance company were foreclosed in 1879, and the premises were sold under referee's deeds which embodied no part of the restrictive covenant and made no reference thereto. The plaintiff's lot was bid in by Gustav Gottheil, and the defendant's lot by Artemas H. Holmes, who was then the owner of the equity of redemption. From that time down to the conveyance to the plaintiff, the title to his lot passed by mesne conveyances in the form of full covenant warranty deeds, none of which referred to the restrictive covenant in the deed from Lenox; and the title to the defendant's lot passed by similar conveyances, with a single exception in 1887, when Jacob B. Tallman became the owner thereof under a deed "subject to the covenant against nuisances, and as to buildings contained in a certain deed made by James Lenox to William Lalor, dated the 10th day of August, 1870, and recorded in the office of the register aforesaid in liber 1154 of Conveyances, page 253, August 10th, 1870."

There has been much judicial writing upon the subject of restrictive covevants, and as may be anticipated from the very nature of the topic, the cases abound in fine and subtle distinctions which have been invented either to overcome the rigor of the common law in courts of equitable cognizance, or to adapt the settled forms of relief to fit special cases. There are many decisions upon this branch of the law which appear to be in hopeless conflict with each other, but which are

easily reconcilable when their peculiar circumstances are understood. We shall make no attempt to analyze the decisions, for we think the case is plainly outside of any rule under which restrictive covenants can be enforced. For the particular purposes of this case such covenants may be broadly divided into three classes. In the first class may be placed those which are entered into with the design to carry out a general scheme for the improvement or development of real property. This class embraces all the various plans, generally denominated in the English cases as building schemes, under which an owner of a large plot or tract of land divides it into building lots to be sold to different purchasers for separate occupancy, by deeds which contain uniform covenants restricting the use which the several grantees may make of their premises. In such cases the covenant is enforceable by any grantee as against any other upon the theory that there is a mutuality of covenant and consideration which binds each, and gives to each the appropriate remedy. Such covenants are entered into by the grantees for their mutual protection and benefit, and the consideration therefor lies in the fact that the diminution in the value of a lot burdened with restrictions is partly or wholly offset by the enhancement in its value due to similar restrictions upon all the other lots in the same tract. Illustrations of this class may be found in *De Gray* v. *Monmouth Beach Club House Co.* (50 N. J. Eq. 340) ; *Parker* v. *Nightingale* (88 Mass. 341) ; *Nottingham P. B. & T. Co.* v. *Butler* (L. R. [15 Q. B. D.] 261) and *Barrow* v. *Richard* (8 Paige, 351).

The second class embraces those cases in which the grantor exacts the covenant from his grantee, presumptively or actually, for the benefit and protection of contiguous or neighboring lands which the former retains. In such cases the grantees, if there are more than one, cannot enforce the covenant as against each other, although the grantor, and his assigns of the property benefited, may enforce it against either or all of the grantees of the property burdened with the covenant. In this class are the leading case of *Tulk* v. *Moxhay* (2 Phillips

Ch. 774) and *Whitney* v. *Union Ry. Co.* (11 Gray, 359), *Seymour* v. *McDonald* (4 Sand. Ch. 502), and *Equitable Life Assurance Society* v. *Brennan* (148 N. Y. 661).

Then there is a third class, where there are mutual covenants between owners of adjoining lands in which the restrictions placed upon each produce a corresponding benefit to the other, and in such a case, of course, either party or his assigns may invoke equitable aid to restrain a violation of the covenant. (*Trustees of Columbia College* v. *Lynch*, 70 N. Y. 440.)

We think the case at bar does not fall within either of the three classes referred to. Obviously it is not in the first class relating to a division of land into lots conveyed by separate deeds containing covenants entered into by each of the grantees. Lenox conveyed the whole plot to Lalor. That conveyance, it is, true, was made subject to the restrictive covenant, but there is no evidence that the land was to be divided, and Lalor was under no obligation to divide it. The covenant was purely for the benefit of Lenox, or his remaining lands, if he had any. In no aspect of the case could the covenant be said to have benefited any part of the land burdened by it. That land all belonged to Lalor. It was all in one piece and it was all covered by the same restrictions. The same conditions prevailed when Lalor conveyed an undivided one-third interest in the land to Coleman. The latter took with notice of the covenant in the deed from Lenox to Lalor, and, assuming that it was not merely a dry personal covenant, Lenox could have enforced it against Coleman as well as against Lalor. When Lalor and Coleman conveyed to Coburn, subject to the covenant in the deed from Lenox to Lalor, the land was still in a single piece and Coburn, the absolute owner of it, was free to do with it as he pleased except as against Lenox, the original covenantee, or those who stood in his shoes. At this juncture in the history of the title there was for the first time a division of the property. Eleven separate lots were mortgaged by Coburn to the insurance company, but none of the mortgages embodied any part of the

restrictive covenant, or contained any reference thereto. When the separate lots were thereafter conveyed to different grantees there was no mention of the covenant, and when the mortgages were subsequently foreclosed, the referee's deeds were qualified by no restrictions. Upon these facts we cannot assent to the contention of the learned counsel for the plaintiff that Lenox was the common grantor of the parties to this action; that the covenant was exacted by Lenox because the property was to be divided into lots, and that it was taken not for his own benefit but to protect those who might later become the separate owners of parts of the tract. By the inevitable logic of the transaction Coburn became the common grantor of the parties. Having the title to the whole of the land, he had the right to do with it as he pleased, except as against Lenox and his assigns. Coburn decided to divide the property and to sell it without restrictions, and he carried his resolution into effect. Neither the plaintiff nor the defendant have any different title than that which they derived through the unrestricted deeds from Coburn. The original covenant, which may be good in favor of Lenox or his assigns as against any grantee of Coburn in this tract, is not enforceable as between such grantees.

It is equally clear that the plaintiff has not brought his case within the second class mentioned. It might be within that class if the plaintiff were in court representing Lenox. In that event the question would arise whether the covenant was one purely personal to Lenox, and, if so, whether it would be enforceable at all, or whether it was made for the benefit of land retained by Lenox when he sold to Lalor, but afterwards conveyed to the plaintiff. But that is not the situation. The plaintiff represents Coburn, the covenantor. He stands for the land burdened and not for any land benefited by the covenant. And in that regard the plaintiff and the defendant are upon precisely the same footing with reference to the original covenant. Neither is under any covenant obligation to the other, although both may possibly be bound to the original covenantor. In other words, the case can only be

32

brought into the second class by a plaintiff who acquired the title of Lenox to lands for the benefit of which the covenant was made.

It is plain also that the case is not within the third class referred to. That class includes only those cases in which the owners of adjoining or contiguous lands enter into mutual covenants containing restrictions by which each is burdened for the benefit of the other. It is not even claimed that the plaintiff comes within this rule, and we have referred to it solely for the purpose of demonstrating that the plaintiff is not within either of the three general rules under which such covenants may be enforced. We do not mean to intimate that special circumstances may not exist in which a case not within the three classes above referred to may present considerations which would justify the enforcement of such a covenant in a court of equity. It is enough to say that no such circumstances appear in the case at bar. We have used the foregoing classification as a brief and convenient method of showing that all the authorities relied upon by the plaintiff fall within one or the other of these divisions, and that he is not within either of them. We might have stopped, indeed, with the discussion of the first class, for the plaintiff's whole position rests upon the assertion that when Lenox took the covenant from Lalor it was contemplated that the property should be divided into lots and, as it does not appear that Lenox retained any lands to be benefited by the covenant, it must have been made for the mutual benefit of subsequent owners. We have shown why this position is not tenable upon the facts presented by the record, and we think the order of the Appellate Division should be affirmed, with costs.

CULLEN, Ch. J., HAIGHT, VANN, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Order affirmed.