CATHERINE S. McKENNA, Appellant, v. ISABELLE LEVY, Respondent.

Second Department, April 5, 1918.

Real property — covenant restricting use of lands and buildings to be erected thereon — map showing plan for development of real estate conveyed to various grantees — restrictive covenant construed in the light of plan shown on map — when grantee cannot alter street plans or frontage of buildings to be erected — injunction.

A covenant restricting the use of real estate imposed upon the lands of grantees holding through *mesne* conveyances from a common grantor cannot be modified by one of them without the consent of the others.

Where a map made by a landowner who conveyed portions of his property to various grantees showed a building plan for the development of the property by laying out streets with lots fronting thereon and the grantees covenanted not to erect a building of less than a certain cost upon any lot, or to use or occupy the premises for any other purpose than a private dwelling and that any such building or extension thereof shall stand back a certain distance from the curb line of the street, the covenant must be read in connection with the map and a purchaser holding through *mesne* conveyances has no right to change the map by laying out new streets, or by turning houses erected at right angles to the street frontage shown on the map, which acts constitute a violation of the restrictive covenant which will be restrained by injunction at the suit of an adjacent grantee.

Where a grantee notwithstanding the written protest of another grantee erected buildings in violation of the restrictive covenant aforesaid, she will be required to remove them and will also be enjoined from erecting any similar structures which will violate the covenant.

APPEAL by the plaintiff, Catherine S. McKenna, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Queens on the 28th day of November, 1916, dismissing the complaint on the merits upon the report of a referee appointed to hear and determine the issues.

*Charles M. Russell* [*Walter L. Post* with him on the brief], for the appellant.

*Henry Stern*, for the respondent.

KELLY, J.:

The plaintiff, owning a private dwelling on the east side of Beach Forty-fourth street, near the ocean at Edgemere in Queens county, brought this action on April 21, 1916, to restrain the defendant from erecting three buildings on two lots on the opposite or west side of Beach Forty-fourth street, as well as to compel the removal of three similar structures erected by defendant in 1915 on two lots on the west side of Beach Forty-third street, in the rear of plaintiff's property, plaintiff alleging that said structures violated certain restrictive covenants in the deeds under which defendant claimed title to her property.

There is practically no question of fact as to the defendant's

transactions and the plaintiff's grievance. The location of
the property, the language of the restrictive covenants, the
character of the defendant's three buildings already completed
and of the three similar buildings which defendant proposes
to erect, are not in dispute. The plaintiff's house is built
on a plot of land one hundred and eighty feet front on the
street by ninety-seven feet in depth. The defendant owns
two lots each twenty feet front by ninety-seven feet in depth,
in the rear of plaintiff's premises fronting on Beach Forty-
third street, the next street easterly from Beach Forty-fourth
street. On these two lots the defendant in 1915, despite
plaintiff's written protest, constructed *three* houses, not fronting
on Beach Forty-third street, but built sideways — fronting
south towards the Atlantic ocean, the rear two-thirds of each
house on one lot and the front one-third on the other.
Defendant's houses are built on spiles and have no cellar.
Of course, they could not front on Beach Forty-third street,
and so the defendant constructed a walk, passageway or
court, about nine feet wide, running at right angles to the
street, and the three houses front on that passageway. The
defendant was about to repeat this building operation by
constructing three similar houses, turned about to face the
south, on two lots on Beach Forty-fourth street, when she
was enjoined by a temporary injunction, which was continued
by the Special Term pending the trial of the action. In the
year 1900 the common grantor of the parties, Ocean and
Bay Front Improvement Company, conveyed by full covenant
warranty deed a tract of land to one Morrill, extending from
the west side of Beach Forty-third street (Lucia avenue) to
the east side of Beach Forty-fifth street (George avenue),
bounded north by the Long Island railroad and south by
the Atlantic ocean, with the grantor's right in the streets.
The property now owned by the plaintiff and defendant was
included in the boundaries of the land conveyed, and the
purchaser, the party of the second part, covenanted as follows:
" The party of the second part for himself his heirs and
assigns does hereby covenant and agree with the party of the
first part its successors and assigns that there shall not be
built upon the hereinbefore first described premises or any
part thereof a building to cost less than twenty-five hundred

dollars ($2,500.00) and that they shall not use or occupy said premises or any part thereof or any building thereon or permit the same or any part thereof to be used or occupied for any other purpose than a private dwelling and that any such building or any piazza or extension thereon shall stand at least fifteen (15) feet back from the curb line of said street."

Morrill had a map made, showing the land laid out in lots twenty feet wide and ninety-seven feet deep fronting on the streets, and thereafter built three houses on the east side of Frank avenue, Beach Forty-fourth street. He sold two of the houses, one to the plaintiff and one to one Hosford, each house located on a plot sixty feet front on the street. Subsequently, in 1911, McKenna and Hosford bought additional plots so that they owned the entire east side of Beach Forty-fourth street. In the deeds to plaintiff and Hosford the property was conveyed subject to restrictions in prior deeds of record, and the development was for a residential, high class neighborhood. This development and the sales mentioned were in 1908 — eight years after Morrill first bought the property in 1900. In 1911 Morrill conveyed all of the property purchased in 1900, except the parcels conveyed to plaintiff and Hosford, to the Hada Realty Company subject to the " restrictions of record so far as they are in force." The Hada Realty Company became involved in financial difficulties, and in January, 1912, the property conveyed to it by Morrill was sold in foreclosure proceedings and purchased by one Scheer. Scheer filed a map showing his purchase laid out in lots running east and west, each twenty feet front by ninety-seven feet in depth and fronting on streets running north and south. On July 11, 1914, Mr. Scheer held an auction sale of the property covered by the referee's deed, with other adjoining property owned by him. This adjoining property owned by Scheer was also restricted as follows: " The parties of the second part, for themselves, their heirs and assigns do hereby covenant and agree with the party of the first part its successors and assigns, that there shall not be built upon said premises or any part thereof, a building to cost less than $3,000, and that they shall not use or occupy said premises, or any part thereof, or any building thereon, or permit the same or any part thereof,

to be used, or occupied for any other purpose than as a private dwelling or hotel,. and that any such building or any piazza or extension thereon, shall stand at least fifteen feet back from the curb line of said street, and that any house built thereon shall connect with any sewer that may be in said street, so that no sewerage or water shall run into the ground surrounding said premises."

Mr. Scheer's auction sale in July, 1914, was conducted under printed terms of sale containing a map showing the development of the property up to that time, including the three houses constructed on Beach Forty-fourth street, and so far as the locality in suit is concerned, showing all the lots running east and west and fronting on streets running north and south. It was provided in the terms of sale that seventy per cent of the purchase price might remain on bond and mortgage, and the property was sold subject to restrictions, and as to the blocks in which the property of plaintiff and defendant is located it is stated " Blocks ' A ' and ' B ' will be sold subject to the covenants and restrictions of record as modified and so far as they are in force, which are substantially as follows:

" It is hereby ·covenanted and agreed that no buildings shall be erected on the said premises to cost less than Two thousand five hundred dollars ($2,500) and said buildings shall be used only for the purpose of private dwellings or boarding houses or hotels except that private garages for not more than two automobiles each may also be erected and maintained on the premises, and each building so erected shall stand at least fifteen feet back from the curb line of the street, any porch or piazza, however, not to be included in the fifteen feet, but the said distance, to be measured from the curb line to the body of the house, and

" Provided, However, that bathing houses may be erected on the portion of said premises adjoining the ocean, and stores may be erected on a lateral street laid out South of and along the Railroad between Lucia Avenue and George Avenue, and

" Provided, However, that all of said restrictions shall terminate on January 1, 1927."

It will be observed that in these terms of sale Scheer assumes to license " boarding houses or hotels " on property which

was already restricted to private dwellings. Of course there is no suggestion that plaintiff or her neighbor Hosford, owning the entire east side of Forty-fourth street, ever consented to any such modification, and the restrictions could not be modified without plaintiff's consent. (*Korn* v. *Campbell*, 192 N. Y. 495.) At this auction sale the defendant purchased the two lots on the west side of Beach Forty-third street, the property on which she has attempted to turn the lots around, building three houses facing south instead of one house on each lot facing east. It is apparent that the defendant, buying those lots by reference to the map and subject to these restrictions, cannot rearrange the entire tract and turn lots around and about, and build three, or as many more houses, or structures on stilts, as she can crowd on the lots facing at right angles to the frontage of the lots shown on the map. Between the south side of defendant's lots and the ocean there is another parcel of land 200 or more feet in width along the street. What the owner of that property may think of defendant's changing about the front of her lot so as to face him with three houses on stilts looking into his side windows, is not before the court here. Mrs. Levy did not purchase lots fronting on the Atlantic ocean, although she has endeavored by main force to make them front the ocean.

The learned referee found that the three buildings already erected and the three buildings about to be erected do not violate the restrictive covenants in the title to the premises of plaintiff and defendant, and judgment has been entered accordingly against the plaintiff, with costs.

He found at the request of the plaintiff:

" XIX. That the erection of the said three houses on Beach 43d Street and the proposed erection by the defendant of three houses on Beach 44th Street greatly damage all adjoining property and tend to destroy the value of the adjoining property for choice residential purposes, which was the purpose and intent of the restriction placed upon these premises."

" XXVII. That the apparent purpose and intent of the restrictive covenant were to protect the two blocks covered thereby from other use or occupancy than as private dwellings,

and in order to create thereon a residential neighborhood only."

" XXXIV. That the buildings on Beach 43d Street were not erected in compliance with the building laws of the City of New York and Borough of Queens in which erected, as to cement and fire proof filling of the sides of the said houses when upon a court of less than three feet in width an open court between two houses considered as being closed at the medial line thereof, nor as to encroachments upon the said courts, the said buildings and side walls with extensions encroaching upon one-half of the said six foot court or a court of three feet, to the full extent of three feet in each instance, and with cornices and projections encroaching variously upon said court.

" XXXV. That the buildings erected or proposed to be erected upon Beach 44th Street did not meet the requirements of the building laws of the City of New York or the Borough of Queens, in that the court between the first and second and the second and third houses were not eight feet in width as required, and were not free from encroachments from the ground to the sky line but were variously encroached upon by bay windows, cornices and porches, and that the interior side walls of houses Nos. 1, 2 and 3 were not brick filled or fire proofed as required by the building laws of the City of New York, in evidence herein; and that each of the buildings erected on Beach 43d Street and Beach 44th Street plots known as Nos. 2 and 3 are connected with a common entrance porch extending from house to house."

In his opinion the referee recites the restrictive covenant and says: " This covenant of restrictions was placed upon the lands of the plaintiff and the defendant by their common grantor and is binding upon both parties to this action." He says: " I do not think that defendant's defense of change in neighborhood is valid for the reason that so far as the restricted area is concerned, there has been no change," and again, " The defendant is the first to attempt to place upon any part of the tract formerly owned by the common grantor and restricted as above mentioned, buildings which are distasteful to the owners of property within the restricted area. The plaintiff and the other owners who have erected dwellings

upon the restricted area have all complied with the covenant and have made improvements upon their property of which they may well be proud, except in one instance where it is claimed that there is a violation in which case there is now pending this action to restrain it. The defendant's structures are not in keeping with the other structures erected upon the restricted area and the plaintiff and her neighbors have just cause to complain of the conduct of the defendant. The defendant has resorted to a sharp, mean, skillful and contemptible 'practice in respect to the erection of her houses." This is followed by what appears to us to be an erroneous conclusion: " I have studied the covenant carefully and I regret that I can see no way to give relief to the plaintiff . from the defendant's unconscionable conduct."

If a suitor in equity having just cause to complain of " sharp," " mean," " skillful and contemptible " and " unconscionable " conduct on the part of a defendant, is to be denied redress and dismissed from the court, it is an unfortunate commentary on our method of administering justice. But we think the referee was wrong, and that his conception of the powers of a court of equity was entirely too limited. He appears to have overlooked the effect of the map showing a complete· plan for the development of the property by laying out streets, and lots fronting on streets, which plan defendant has disregarded in the erection of the three houses already erected, and which she proposes to again disregard and to destroy in the additional buildings, construction of which was prevented by the temporary injunction of the court which has been vacated by the judgment appealed from.

The covenants and restrictions must be read with the map and plan before us, the original layout˙ of the streets by Morrill in 1900, and the confirmation of this layout by Scheer in 1914, when he adopts the same streets and lays out lots fronting on them in the same manner as Morrill intended fourteen years before. Scheer did not attempt to alter the map. He did not attempt to lay out cross streets or nine-foot˙ " courts " running into the blocks at right angles, or to authorize a change of front and the building of three houses sideways on two lots intended for certainly not more than . two houses fronting on the streets, houses which, as the

referee has found, violate the spirit and the letter of the building laws and regulations. We are of opinion that the defendant's building operation was not only subject to the criticism of the referee, but that it violated the letter of the covenant as well. (*Korn* v. *Campbell, supra; Thompson* v. *Diller,* 161 App. Div. 98; *White* v. *Moore,* Id. 400; *McDougall* v. *Schneider,* 134 id. 208; *Gutting* v. *Eiermann,* 165 id. 916; *McNeil* v. *Gary,* 40 App. D. C. 397; 46 L. R. A. [N. S.] 1113.) The referee says, " the covenant is free from any latent ambiguity. There is no room for construction," and then proceeds to discuss (1) the cost of the buildings, (2) that the premises must be used as a private dwelling, (3) that the buildings shall stand back fifteen feet from " the curb line of said street." But his attention was not called to the language of the covenant read with reference to the map, " there shall not be built upon the hereinbefore first described premises or any part thereof a *building* to cost less than twenty-five hundred dollars ($2,500.00) and that they shall not use or occupy said premises or any part thereof or any building thereon or permit the same or any part thereof to be used or occupied for any other purpose than *a private dwelling* and that *any such building* or any piazza or extension *thereon* shall stand at least fifteen (15) feet back from the curb line of said street." Mrs. Levy purchased a " part " of " said premises." She purchased at the auction sale with the map before her, two *lots,* 2 and 3 in block B, each twenty feet front, on the west side of Beach Forty-third street, by ninety-seven feet in depth. If it be said that the two lots are not one parcel — if it be said that each lot may be taken separately, certainly these lots were the part or parts of the restricted premises purchased by her. And the plain language of the covenant is that she shall not erect on this part, or these parts, more than one building to a part — that she " shall not use or occupy said premises or any part thereof or any building thereon or permit the same or any part thereof to be used or occupied for any other purpose than a private *dwelling* and that *any such building* or any piazza or extension *thereon* shall stand at least fifteen (15) feet back from the curb line of said street." The utmost Mrs. Levy can claim under this is the right to put up one dwelling on

each lot. Each lot shown on the map which she had before her, was the *part* of the premises purchased by her and restricted to one private dwelling. To say that having purchased the property with reference to a map showing a development by streets and highways and lots laid out fronting on such streets and highways, with covenants and restrictions as to buildings to be erected on the property set back fifteen feet from the curb, she can change the map, lay out new streets, courts or private ways, and turn the houses at right angles, is to do violence to the plain, unambiguous language of the restrictive covenant.

The development of this ocean front property along the Rockaway peninsula has been a prolific source of litigation. Its proximity to the metropolis attracts hundreds of thousands of visitors in the summer months and makes against the popularity of restrictive covenants. A desire for privacy is looked upon as out of place, and people like the plaintiff and others, who purchased in 1908 relying on maps and covenants and restrictions, are brought face to face with new purchasers who may obtain title to the adjoining land on terms permitting seventy per cent of the purchase price to remain on bond and mortgage, and whose only purpose is to make a quick profit without reference to restrictions on the use of the land. If by skillful or unconscionable methods such as are pointed out by the referee, restrictions and building laws may be disregarded, it may result in profit to these investors, but the character of the locality is changed and the intention of the common grantor and those purchasing on the faith of the covenants is defeated.

It is the duty of a court of equity to enjoin these illegal trespasses upon the rights of others. The breach of such a covenant is the important thing. Mr. Pomeroy says that injunctions in this class of cases are granted "almost as a matter of course * * *. The amount of damages, and even the fact that the plaintiff has sustained *any* pecuniary damages, are wholly immaterial." (4 Pom. Eq. Juris. [3d ed.] § 1342.) And he quotes Sir George Jessel: "It is clearly established by authority that there is sufficient to justify the Court interfering, if there has been a breach of the covenant. It is not for the Court, but the plaintiffs, to estimate the

Second Department, April, 1918.          [Vol. 182.

amount of damage that arises from the injury inflicted upon them. The moment the Court finds that there has been a breach of the covenant, that is an injury, and the Court has no right to measure it, and no right to refuse to the plaintiff the specific performance of his contract, although his remedy is that which I have described," *i. e.*, injunction. (*Leech v. Schweder*, L. R. 9 Ch. App. 463, 465.)

So this case does not depend on whether the defendant's three houses constitute a " three-family house," as the plaintiff apparently insisted before the referee, or upon the fact that the side wall of the house nearest Forty-third street is fifteen feet from the curb. If the fifteen-foot set-back agreement is to have any force, certainly it provides that houses in the restricted area must be set back fifteen feet from the curb line of the street on which they are built. No one contemplated the abnormal method of construction adopted by Mrs. Levy, but if she has the right to lay out new streets, or courts, or ways, it must be observed that her three houses are not set back fifteen feet from the curb of the court or passageway on which they face. In *Bauer* v. *Gribbel* (2 App. Div. 80) it was held that the purpose of a set-back covenant was to establish a building line and that the restriction would apply to every part of the land conveyed. The defendant's husband testified that the three houses did not face any street but faced the " ocean front." The maps show that this is not true. Mrs. Levy's lots are not on the " ocean front," and the three houses face the property of his neighbor to the south between him and the ocean. The plain intent of the restrictive covenant in the original deed from the common grantor to Morrill, coupled with the map by Scheer, was to carry out a general scheme for the improvement and development of the property as described by Judge Werner in *Korn* v. *Campbell* (*supra*), by laying out streets running north and south with lots fronting on said streets, and the covenants must be read and construed with reference to that map. The words " building " and " dwelling " in the covenant meant a building or dwelling on the lots so laid out, and the defendant has no right to change and alter the map by laying out a private court or way at right angles to the streets shown on the map, or to so radically change the layout as to build

three houses on two lots, changing the frontage around, as has been done here. If we consider the defendant's purchase of two lots, she has clearly violated the spirit and the letter of the covenant by constructing rear buildings; that is, if we take the house nearest Forty-third street as the building on the front of the two lots, the other buildings are rear buildings, and in the defendant's application for the building permits they are described as rear buildings.

We think the defendant's violation of the covenant was deliberate and willful; she erected the three structures on the Forty-third street lots notwithstanding the written protest of the plaintiff, knowing that no other owner of lots in the restricted area had attempted such a radical change. Her structures are in clear violation of the rights of the owner of the property to the south of her lots and between her and the ocean, and while that owner is not before the court complaining, her disregard of the rights of others is clearly shown. Equity looks to the intent rather than to the form. It endeavors to get to the substance of things and to ascertain, uphold and enforce rights and duties which spring from the *real* relations of the parties. It will never suffer mere appearances and external form to conceal the true purposes, objects and consequences of a transaction. (Pom. Eq. Juris. [3d ed.] § 378.) It is not necessary in this case to resort to any refined construction of the covenants. We think the history of the development at this locality at Edgemere, coupled with the maps and the language of the covenant, shows clearly that the referee was justified in characterizing the defendant's action as unconscionable, but his conclusion that plaintiff must suffer this gross infringement of her rights is wrong. Having found that defendant's action greatly damages all the adjoining property and tends to destroy its value contrary to the purpose and intent of the restrictions, a clear case was presented for the application of the rule that equity will not suffer a wrong without a remedy.

The judgment should be reversed, with costs, and judgment directed for the plaintiff as prayed for in the complaint, with costs. The referee's first, second and third conclusions of law are reversed. Additional findings of fact are made as follows:

a. That the defendant purchased the two lots Nos. 2 and 3 in block B, on the west side of Beach Forty-third street, and the two lots Nos. 19 and 20 in block A on the west side of Beach Forty-fourth street, with knowledge of the restrictive covenant, and with reference to the map or plan Exhibit 6.

b. That said restrictive covenants and the map or plan aforesaid constituted a building scheme for the improvement and development of the property by the erection of dwellings fronting on the streets shown on the map or plan; that said covenants and restrictions were in full force at the time the defendant purchased, and that there had been no change in the scheme for the development of the property within the restricted area.

c. That the three houses constructed by defendant on lots Nos. 2 and 3 do not front on any street laid out on the map or plan aforesaid, but each one of said three houses is constructed facing the south side of said lots, instead of east towards the street as the lots are laid out. Two-thirds of each one of said three houses — the rear portion thereof — is located in lot 3, and one-third of each house — the front portion — is located in lot 2. The house nearest the street is a front house on the lots as laid out on the map or plan aforesaid and the remaining two houses are rear houses located on said lots. Defendant has laid out a private way ten feet in width, running at right angles to the street shown on said map as Beach Forty-third street, in front of said three houses, by means of which access is obtained thereto. Said private way is not shown on the map or plan. The defendant is not the owner of the land lying between said two lots and the Atlantic ocean.

The three houses which defendant proposes to erect on lots 19 and 20 in block A are similar to those above described as to location, character, etc.

And the following conclusions of law:

1. That the houses already erected by defendant on lots 2 and 3 in block B violate the covenants and restrictions as to buildings to be placed upon said lot and the rights and easements of the plaintiff therein and that the same should be removed.

2. That defendant be enjoined from erecting the three

houses proposed to be erected by her on lots 19 and 20 in block B.

3. That judgment be entered accordingly.

JENKS, P. J., MILLS, RICH and BLACKMAR, JJ., concurred.

Judgment reversed, with costs, and judgment directed for the plaintiff as prayed for in the complaint, with costs. Order to be settled on notice before Mr. Justice KELLY.