Kew Gardens Corporation, Plaintiff, *v.* Ciro's Plaza, Inc., and Others, Defendants.*

Supreme Court, Special Term, Queens County, October 31. 1940.

* Revd., 261 App. Div. 576.

*Harry Hausknecht [Raphael H. Weissman* of counsel], for the plaintiff

*Stull & Gore [Philip A. Gore* of counsel], for the defendants Ciro's Plaza, Inc., and the Cien Corporation.

*Breed, Abbott & Morgan [William L. Hanaway* of counsel], for the defendant Underwriters Trust Company.

STEINBRINK, J.  The plaintiff seeks a permanent injunction restraining the defendants from operating a cocktail lounge and bar in the Homestead Hotel in Kew Gardens.  The hotel is owned by the defendant Underwriters Trust Company, and is operated by the defendants Cien Corporation and Ciro's Plaza, Inc., as lessee and sublessee, respectively.

In 1912 the plaintiff acquired a tract of land known as Kew Gardens, which it developed and subdivided into plots.  Part of the tract was restricted to residential use, part to business use, and part to a combination of both.  As separate parcels were sold by the plaintiff, the deed of conveyance in each case contained restrictive covenants, subject to modification and release only by the plaintiff.  In 1919 the plaintiff erected a hotel on land which it had retained and which is now known as the Kew Gardens Hotel. This hotel, which is still owned by the plaintiff, provides facilities for social functions such as are usually held in public hotels.

On September 1, 1927, the plaintiff conveyed the parcel on which the Homestead Hotel is now situated to Wohlbro Construction, Inc., by a deed which contained, among other provisions, the following: " And the party of the second part for its heirs and assigns does hereby covenant to and with the party of the first part that neither the party of the second part nor its heirs or assigns shall or will without the consent by written instrument of the party of the first part at any time hereafter erect or permit upon any part of the land conveyed by the present indenture any slaughter house, smithshop, forge, furnace, steam engine, brass foundry, nail or other iron foundry, or any manufactory of gunpowder, glue, varnish, vitriol, ink or turpentine, or for the tanning, dressing or preparing of hides, skins or leather, or any ale house, brewery, distillery or other place for manufacturing or compounding of intoxicating liquors, wine, beer, ale or spirits or for selling or dispensing same in any form or for carrying on any other noxious, dangerous or offensive trade or business and that neither the party of the second part nor its heirs or assigns will erect on said premises or permit to be erected thereon without the written consent of the party of the first part any sign or any fence, wall or similar structure or any building intended for occupation of more than one family or household or

any building nearer than twenty feet, or any barn, stable or other outhouse nearer than forty feet to the line of any street, road or park laid out or which may be laid out upon the property embraced in said map, or any barn, stable, outhouse or cesspool nearer than ten feet to any adjacent property of the party of the first part and further that the present covenants on the party of the second part shall run with the land intended to be affected hereby and may be enforced by action, injunction or otherwise.   *   *   *   The party of the first part hereby consents to the erection on said plot of a fire proof building not exceeding four stories and basement in height to be used as a family hotel provided same does not in any respect come under or within the provisions of the Tenement House Law as now in force and provided further that such building shall not be used for shops, for sale of merchandise or any commercial purpose other than usual facilities provided and necessary for the conduct of a family hotel."

By mesne conveyances the defendant Underwriters Trust Company became the owner thereof.   Each of the conveyances in the chain of title from plaintiff to the Underwriters Tiust Company was made subject to the above-mentioned restrictions.

Some time prior to December, 1939, the defendants installed in the Homestead Hotel a bar and cocktail lounge. and beginning with December, 1939, used these facilities for the sale of intoxicating liquor to the public.   Before this, plaintiff's hotel was the only one in Kew Gardens which had a bar, restaurant and cocktail lounge in which liquor was sold to the public.

The above-stated facts are not disputed   Plaintiff's claim is that the defendants' violation of the above-quoted covenant " by their selling and dispensing to the public of intoxicating liquors, *   *   *   has caused and will continue to cause the plaintiff irreparable damage."

The defendants assert that the use sought to be enjoined was sanctioned by the deed which contains the restrictive covenant invoked by the plaintiff.   They advert to the following provision therein contained·  " The party of the first part hereby consents to the erection on said plot of a fireproof building not exceeding four stories and basement in height, to be used as a family hotel providing the same does not in any respect come under or within the provisions of the tenement house law as now enforced and provided further that such building shall not be used for shops for the sale of merchandise or any commercial purposes other than the usual facilities provided and necessary for the conduct of the family hotel."

May the defendants' bar and cocktail lounge be regarded as " usual facilities provided and necessary for the conduct of the

family hotel?" As distinguished from an ordinary public hotel, a family hotel is designed primarily for the accommodation of permanent guests, and only incidentally for the accommodation of transients. Facilities for the common use of such permanent guests may well include a bar and cocktail lounge. But there is a clear distinction between facilities provided for such use and facilities designed to serve the public generally. The defendants concede that liquor is being sold to the public, and there can be no serious question concerning the fact that the bar and cocktail lounge here complained of were installed to further such sales. It must, therefore, be quite evident that the bar and lounge, as now operated, are not " usual facilities provided and necessary for the conduct of the family hotel." (*Murray* v. *Weston*, 23 App Div. 623.)

The defendants assert, further, that the restrictive covenant was not intended to prevent the sale of intoxicating liquors unless such sale is deemed a " noxious, dangerous or offensive trade or business." They find this meaning in the following portion of the restrictive covenant: " And the party of the second part, for its heirs and assigns, does hereby covenant to and with the party of the first part, that neither the party of the second part, nor its heirs or assigns shall or will without the consent by written instrument of the party of the first part, at any time hereafter erect or permit upon any part of the land conveyed by the present indenture * * * any ale house, brewery, distillery or other place for the manufacture or compounding of intoxicating liquors, * * * or for selling or dispensing the same in any form, or for carrying or any other noxious, dangerous or offensive trade or business, * * *." The doctrine of *noscitur a sociis* which the defendants invoke in support of their construction permits reference to associated words to ascertain the meaning of doubtful words. But here the restriction against the sale of intoxicating liquors was expressed in language free from ambiguity.

The clause in the deed in suit sanctioning the erection of a building for use as a family hotel and inserted at a time when the plaintiff owned the only public hotel in Kew Gardens, indicates quite clearly that the restrictive covenant was intended not for the benefit of the entire tract originally owned and developed by the plaintiff, but for the benefit of the land retained by the plaintiff. By means of the covenant plaintiff sought to avoid competition with its hotel. The covenant thus falls into the second class described in *Korn* v. *Campbell* (192 N. Y. 490, 495) as those " in which the grantor exacts the covenant from his grantee, presumptively or actually, for the benefit and protection of contiguous or neighboring lands which the former retains. In such case the grantees, if there are

more than one, cannot enforce the covenant as against each other, although the grantor, and his assigns of the property benefited, may enforce it against either or all of the grantees of the property burdened with the covenant."

While the parties were competent to contract as they did, the defendants contend that equity should withhold specific performance by reason of the fact that the contract is one-sided, enforcible only by the plaintiff; that it permits the plaintiff at will to relax or annul restrictions binding on any of its grantees; that the plaintiff has in fact released restrictions so as to permit the sale of intoxicating liquors in stores and taverns, two of which are close to the defendants' hotel and one of which is situated in an apartment building owned by the plaintiff. It must be noted, however, that none of these stores or taverns are regarded by the plaintiff as its competitors. It takes the position in support of which there is considerable justification, that it caters to those who prefer hotel bars and cocktail lounges to taverns or saloons, and that to the extent that such people patronize the defendants' bar and lounge the plaintiff's hotel is losing business.

In view of this circumstance, it cannot be said that the covenant sought to be enforced is harsh or oppressive. It was made to protect the plaintiff's hotel against harmful competition and it is the right to that protection alone which the plaintiff seeks to enforce.

Accordingly, there will be judgment for plaintiff for the relief requested in the complaint. Settle findings and judgment on notice.