J-A28014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SAINT LUKE'S HOSPITAL OF BETHLEHEM, JOHN CAPUANO, DONNA CAPUANO AND MARIA MONTEIRO | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| 736 DELAWARE ASSOCIATES, LLC | : | |
| | : | |
| Appellees | : | No. 1662 EDA 2017 |

Appeal from the Judgment Entered May 18, 2017
In the Court of Common Pleas of Lehigh County
Civil Division at No(s): 2015-C-3223

| | | |
|---|---|---|
| SAINT LUKE'S HOSPITAL OF BETHLEHEM, PENNSYLVANIA JOHN CAPUANO AND DONNA CAPUANO MARIA MONTEIRO | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellees | : | |
| | : | |
| v. | : | |
| | : | |
| 736 DELAWARE ASSOCIATES, LLC | : | |
| | : | |
| Appellant | : | No. 1903 EDA 2017 |

Appeal from the Judgment Entered May 18, 2017
In the Court of Common Pleas of Lehigh County
Civil Division at No(s): 2015-C-3223

BEFORE: GANTMAN, P.J., PANELLA, J., and DUBOW, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JUNE 04, 2018**

Appellants/Cross-Appellees, Saint Luke's Hospital of Bethlehem, John

Capuano, Donna Capuano and Maria Monteiro, and Appellee/Cross-

Appellant, 736 Delaware Associates, LLC, appeal from the judgment entered in the Lehigh County Court of Common Pleas in this real property/restrictive covenant dispute. We affirm.

In its opinions, the trial court correctly set forth the relevant facts and procedural history of this case. Therefore, we have no need to restate them. We add that the court held a bench trial on July 1, 2016. The court dismissed Appellant's amended complaint for lack of standing on December 8, 2016. On Monday, December 19, 2016, Appellants timely filed a motion for post-trial relief. Appellee filed a cross-motion for post-trial relief and for sanctions on December 29, 2016, which the court denied on January 17, 2017. On April 19, 2017, the court denied Appellants' motion for post-trial relief. Appellants filed a *praecipe* to enter judgment on May 18, 2017, and the court entered judgment in favor of Appellee in part and in favor of Appellants in part that same day.

Appellants timely filed a notice of appeal on May 19, 2017. On June 2, 2017, Appellee timely filed a notice of cross-appeal. The court did not order, and the parties did not file, concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant/Cross-Appellees raise two issues for our review:

> DID THE TRIAL COURT ERR AS A MATTER OF LAW AND ABUSE ITS DISCRETION IN DISMISSING [APPELLANTS'] AMENDED COMPLAINT AND HOLDING THAT THE CAPUANOS AND MS. MONTEIRO HAD NO STANDING TO ENFORCE THE SINGLE DETACHED DWELLING RESTRICTION CONTAINED IN THE 1935 AND 1936 DEEDS,

NOTWITHSTANDING THEIR UNDISPUTED STATUS AS DIRECT SUCCESSORS IN INTEREST IN THE CHAIN OF TITLE OF THE GRANTORS/PROMISEES UNDER THOSE DEEDS, SAID GRANTORS BEING TRUMAN M. DODSON AND HIS WIFE FLORENCE C. DODSON?

IN THE ALTERNATIVE, DID THE STIPULATED DEEDS AND FACTS OF RECORD ESTABLISH AS A MATTER OF LAW THAT ST. LUKE'S PREDECESSOR IN INTEREST, WHO ACQUIRED PART OF ST. LUKE'S PROPERTY IN 1923, WAS AN INTENDED THIRD-PARTY BENEFICIARY OF THE 1920 DEED SINGLE DETACHED DWELLING RESTRICTION?

(Appellants/Cross-Appellees' Brief at 6).

Appellee/Cross-Appellant raises three issues for our review:

DID THE [TRIAL] COURT ERR IN CONCLUDING THAT [APPELLANTS], AS SUCCESSORS-IN-INTEREST TO THE PROMISOR OF THE RESTRICTIVE COVENANTS AT ISSUE, LACKED STANDING AS A PROMISEE TO ENFORCE THOSE RESTRICTIVE COVENANTS?

DID THE [TRIAL] COURT ERR IN CONCLUDING THAT [APPELLANTS] LACKED STANDING AS THIRD PARTY BENEFICIARIES TO ENFORCE RESTRICTIVE COVENANTS WHERE NEITHER [APPELLANTS] NOR THEIR PREDECESSORS-IN-INTEREST ARE CLEARLY IDENTIFIED IN THOSE RESTRICTIVE COVENANTS AND WHERE NO COMMON SCHEME OF DEVELOPMENT IS REFELCTED IN THOSE COVENANTS?

DID THE [TRIAL] COURT ABUSE ITS DISCRETION IN DENYING [CROSS-APPELLANT'S] MOTION FOR SANCTIONS SEEKING ATTORNEYS' FEES PURSUANT TO 42 PA.C.S.A. § 2503(7), (9), WHERE THE COURT DID NOT CONDUCT A HEARING ON [CROSS-APPELLANT'S] MOTION AND DID NOT HAVE AN ADEQUATE RECORD UPON WHICH TO BASE ITS DECISION?

(Appellee/Cross-Appellant's Brief at 2). Appellee/Cross-Appellant's first and second issues are restatements of Appellants/Cross-Appellees' first and

second issues.

"Our review in a non-jury case is limited to 'whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law.'" **Hollock v. Erie Ins. Exchange**, 842 A.2d 409, 413 (Pa.Super. 2004), *appeal dismissed*, 588 Pa. 231, 903 A.2d 1185 (2006) (quoting **Bonenberger v. Nationwide Mut. Ins. Co.**, 791 A.2d 378, 380 (Pa.Super. 2002)).

> We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

**Hollock, supra** at 414 (internal citations and quotation marks omitted). "Furthermore, our standard of review demands that we consider the evidence in a light most favorable to the verdict winner." **Sovereign Bank v. Valentino**, 914 A.2d 415, 420 (Pa.Super. 2006).

> Additionally, "the trial court, as factfinder, is free to believe all, part or none of the evidence presented…." **Turney Media Fuel, Inc. v. Toll Bros., Inc.**, 725 A.2d 836, 841 (Pa.Super. 1999). "[T]herefore, assessments of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determinations or substitute our judgment for that of the factfinder." **Id.**

*Sovereign Bank, supra* at 420.

This Court will not disturb a denial of attorneys' fees absent an abuse of discretion. *In re Padezanin*, 937 A.2d 475, 483 (Pa.Super. 2007). An evidentiary hearing is generally required for a trial court to decide a claim for attorneys' fees, unless the facts are undisputed. *In re Estate of Burger*, 852 A.2d 385, 391 (Pa.Super. 2004), *affirmed*, 587 Pa. 164, 898 A.2d 547 (2006).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Carol K. McGinley, we conclude the parties' issues merit no relief. The trial court opinions comprehensively discuss and properly dispose of the questions presented. (*See* Trial Court Opinion, filed December 8, 2016, at 11-23) (finding: **(1)** original tract conveyed under 1920 deed contained certain restrictive covenants including prohibited uses and required setbacks; Mr. Dodson was original promisor or party who made promise to uphold restrictive covenants; original grantors of 1920 Deed were promisees and only persons entitled to enforce promise to uphold restrictive covenants; Appellants were not promisees of restrictive covenants; accordingly, Appellants have no right to enforce restrictive covenant as promisees of 1920 deed and restrictive covenants; **(2)** restrictions in 1920 deed and 1935/1936 deeds contained no language providing for third-party beneficiary status to properties which Appellants currently own; restrictions

in 1920 and 1935/1936 deeds did not provide for any third-party beneficiaries; restrictions in deeds did not mention surrounding property owners in any manner; thus, deeds did not contemplate Appellants as third-party beneficiaries to single-detached-dwelling restriction; concerning whether parties' situation or surrounding circumstances during transfer of property evidenced intent to make Appellants third-party beneficiaries to restriction, 1920 deed specified single detached dwelling house may be erected along Delaware Avenue frontage only of original tract; original tract, however, included property in addition to Delaware Avenue frontage; original tract also included parcel two of Appellee's current property, which fronts Fiot Street, and Appellants' individual plots, which front Seneca Street; single-detached-dwelling restriction in 1920 deed applied only to property that fronts Delaware Avenue; per 1920 deed, any parcel that did not front Delaware Avenue or violate setback requirements could have been erected so long as purpose of building did not violate prohibited uses restriction; subsequent owners of lots not fronting Delaware Avenue were not intended to enjoy benefit of promises made by owners of parcels facing Delaware Avenue, because whole of area was not intended by 1920 deed as general plan or scheme of development, and there is no conformity with any general plan; deeds granting five parcels at issue to parties did not contain single-detached-dwelling restriction; these conveyances established no general plan or scheme of development; therefore, Appellants were not

intended third-party beneficiaries of restrictive covenant in 1920 and 1935/1936 deeds and lacked standing to enforce single-detached-dwelling restriction). (**See also** Supplemental Trial Court Opinion, filed January 17, 2017, at 2-3) (finding: **(3)** Appellants did not initiate current case to be arbitrary, vexatious, or in bad faith; timing of Appellants' suit did not warrant sanctions; court declined to address Appellee's alternative defenses, *i.e.*, unclean hands and laches, because those theories are defenses to substantive issues, which court did not reach because Appellants lacked standing to bring claims; therefore, case did not progress so far as to put responsive defenses before court for disposition). We agree with the court's decision on Appellants/Cross-Appellees' lack of standing and lack of third-party beneficiary status. **See Sovereign Bank, supra**. Further, we defer to the court's decision to deny Appellee/Cross Appellant's request for attorney's fees. **See In re Padezanin, supra**. Accordingly, we affirm on the basis of the trial court's opinions.

Judgment affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/4/18

- 7 -

IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
CIVIL DIVISION – LAW

ST. LUKE'S HOSPITAL OF BETHLEHEM,      :
PENNSYLVANIA, JOHN CAPUANO,            :
DONNA CAPUANO, and MARIA MONTEIRO,     :
                   Plaintiffs    :
                                 :        No. 2015-C-3223

            v.                           :

736 DELAWARE ASSOCIATES, LLC,          :
                  Defendant     :
                                 :

*********************************************************

APPEARANCES:

                Kevin T. Fogerty, Esquire
                For Plaintiffs

                Blake C. Marles, Esquire
                For Defendant

*********************************************************

DECISION

CAROL K. McGINLEY, J.

The above-captioned matter was heard before the court sitting without a jury. The court having heard the testimony, and having examined the proofs offered by the parties, and having heard the arguments of counsel, and the case having been submitted for decision, now makes the following findings of fact and conclusions of law.

The following findings of fact have been stipulated to by the parties:

1. Plaintiff, Saint Luke's Hospital of Bethlehem, Pennsylvania ("St. Luke's") is a not-for-profit corporation which is the owner of a parcel of land located at 763 Seneca Street, Fountain Hill, Lehigh County, PA ("the St. Luke's Property).

2. Plaintiffs, John Capuano and Donna Capuano, are husband and wife, who own and reside at a property located at 751 Seneca Street, Fountain Hill, Lehigh County, PA ("the Capuanos' Property").

3. Plaintiff, Maria Monteiro, owns and resides at a property located at 747 Seneca Street, Fountain Hill, Lehigh County, PA ("the Monteiro Property").

4. Defendant, 736 Delaware Associates, LLC ("736 LLC") is a limited liability company owning a property at 736 Delaware Avenue, Fountain Hill, Lehigh County, PA ("the 736 Delaware Property").

5. 736 LLC acquired legal title to the 736 Delaware Property by Deed dated June 20, 2006, recorded at Document ID No. 7355819, in the office of the Lehigh County Recorder of Deeds, on July 21, 2006 (the "2006 Deed"). Settlement on 736 LLC's purchase of the 736 Delaware Property took place on June 27, 2006.

6. The 736 Delaware Property actually consists of two parcels, one being 18,312.5 square feet (146.5 feet x 125.0 feet), having access only to Delaware Avenue; and the other consisting of 15,640 square feet, having access only to Fiot Street.

7. The two parcels are described in the 2006 Deed as:

   (a) 736 Delaware Avenue (Tract 1), and

   (b) a parcel with frontage along Fiot Street located approximately 125' from the intersection with Delaware Avenue.

8. 736 LLC is wholly owned by Dr. Hayman Salib and his wife, which was formed to acquire and develop the 736 Delaware Property.

9. Dr. Salib entered into a Contract of Sale to purchase the 736 Delaware Property expressly contingent upon obtaining final approval to use the property for medical offices.

10. Upon obtaining zoning approval to use the 736 Delaware Property for medical offices using the single family house which was already on the property with a two-story addition to the rear, 736 LLC acquired the property for $345,000.

11. 736 LLC, Dr. Salib, and his wife were represented by Attorney Vaughn Terrinoni for both the acquisition of the 736 Delaware Property and for obtaining pre-closing zoning approvals.

2

12. Prior to proceeding to settlement/closing on its purchase of the 736 Delaware Property, Dr. Hayman Salib, the principal of 736 LLC, retained attorney Vaughn Terrinoni and architects to review the development potential of the property as medical offices.

13. The 736 Delaware Property and other adjoining properties, including the St. Luke's Property, the Capuanos' Property and the Monteiro Property were at one time part of a single tract of land (the "Original Tract"), which was encumbered by a restrictive covenant contained first in a Deed dated November 27, 1920.

14. The aforementioned Deed dated November 27, 1920 which first set forth the restrictive covenant was a conveyance from James M. Degnan and Katherine M. Degnan, husband and wife, and Eldredge P. Wilbur and Lilian L. Wilbur, husband and wife (the "Original Grantors"), to Truman M. Dodson. The restrictive covenant states in pertinent part as follows:

> "*It is expressly covenanted and agreed by and between the parties hereto that no buildings other than single detached dwelling houses to cost not less than Eight Thousand ($8,000) Dollars each, shall be erected along the Delaware Avenue frontage on the herewith described premises, nor shall the front walls of such dwellings approach the street curb line nearer than fifty (50') feet porches nearer than forty-one feet six inches (41'6"), not including the steps. The same restrictions apply to that part of the frontage on Fiot Street that lies within one hundred and twenty (120') feet of the Delaware Avenue intersection, with the exception of private garages for which there is no restriction as to the price or location. It is further covenanted and agreed that no bone boiling establishment, blacksmith shop, tallow or starch manufactory, liquor saloon or place for the sale of intoxicating liquors, public automobile garage, or auto or machine repair shop shall ever be erected or conducted on the herein described premises or any part thereof. No outhouses or chicken coops on Delaware Avenue property.*"

15. The different portions of the restrictive covenant set forth in the November 27, 1920 Deed will hereinafter be referred to as follows:

3

     *A.     It is expressly covenanted and agreed by and between the parties hereto that no buildings other than single detached dwelling houses to cost not less than Eight Thousand ($8,000) Dollars each, shall be erected along the Delaware Avenue frontage on the herewith described premises[.]*

     *(Said restriction shall hereinafter be referred to as the "1920 Deed Single Detached Dwelling Restriction");*

     *B.     [N]or shall the front walls of such dwellings approach the street curb line nearer than fifty (50') feet porches nearer than forty-one feet six inches (41'6"), not including the steps. The same restrictions apply to that part of the frontage on Fiot Street that lies within one hundred and twenty (120') feet of the Delaware Avenue intersection, with the exception of private garages for which there is no restriction as to the price or location.*

     *(Said restriction shall hereinafter be referred to as the "Setback Restriction"); and*

     *C.     It is further covenanted and agreed that no bone boiling establishment, blacksmith shop, tallow or starch manufactory, liquor saloon or place for the sale of intoxicating liquors, public automobile garage, or auto or machine repair shop shall ever be erected or conducted on the herein described premises or any part thereof. No outhouses or chicken coops on Delaware Avenue property."*

     *(Said restriction shall hereinafter be referred to as the "1920 Deed Prohibited Uses Restriction").*

16. The previously referenced November 27, 1920, Deed, first containing the restrictive covenant quoted in the preceding paragraph, described and conveyed the Original Tract subject to that covenant, as follows:

> Situate on the northeast side of Fiot Street and extending from Delaware Ave to Seneca Street, containing in front or breadth on said Fiot Street three hundred and sixteen (316) feet and extending in length or depth northeastward of that width between parallel lines at right angles to said Fiot Street; the northwest line thereof extending along the southeast side of the said Delaware Avenue and the southeast line thereof extending along the northwest side of the said Seneca Street two hundred (200) feet to the line of land of Tinsley Jeter.

The Original Tract was bounded as follows:

     a.     by Delaware Avenue on the northwest side;

     b.     by Seneca Street on the southeast side;

4

c.  by Fiot Street on the southwest side; and

d.  on the northeast side, by a line parallel to Fiot Street which was located 200 feet northeast of Fiot Street.

17. By Deed dated November 1, 1935 and recorded in Lehigh County Deed Book Vol. 551, Page 592, the owner of the Original Tract, Truman M. Dodson, and his wife, Florence C. Dodson, conveyed to John E. Dodson and Evelyn M. Dodson, husband and wife, out of the Original Tract, a 66.66 foot by 100 foot rectangular parcel fronting on Delaware Avenue. With respect to this conveyance:

a.  This parcel occupied the middle one-third (66.66 feet) of the total Delaware Avenue frontage of the Original Tract (said total frontage being 200 feet);

b.  The Deed for this parcel contains the following restriction, which is substantially similar to the 1920 Deed Single Detached Dwelling Restriction:

> "*It is expressly covenanted and agreed by and between the parties hereto that no buildings other than single detached dwelling houses to cost not less than Eight Thousand Dollars ($8,000.00) each, shall be erected on the herein described premises,*" (said restriction will hereinafter be referred to as the "Single Detached Dwelling Restriction");

c.  The Deed for this parcel also contains the following restriction, which is substantially similar to the 1920 Deed Prohibited Uses Restriction:

> "*It is further covenanted and agreed that no bone boiling establishment, blacksmith shop, tallow or starch manufactory, liquor saloon or place for the sale of intoxicating liquors, public automobile garage, or auto or machine repair shop or outhouses or chicken coops shall ever be erected or conducted on the herein described premises or any part thereof.*" (said restriction will hereinafter be referred to as the "Prohibited Uses Restriction");

d.  The Deed for this parcel does not contain the Setback Restriction; and

e.  This parcel is entirely within the boundaries of the 736 Delaware Property.

18. By Deed dated April 8, 1936 and recorded in Lehigh County Deed Book Vol. 554, Page 374, the owner of the Original Tract, Truman M. Dodson, and his wife, Florence C.

Dodson, conveyed to Truman M. Dodson, Jr. out of the Original Tract a 66.67 foot by 100 foot rectangular parcel fronting on Delaware Avenue. With respect to this conveyance:

   a. This parcel occupied the northern one-third (66.67 feet) of the total Delaware Avenue frontage of the Original Tract (said total frontage being 200 feet);

   b. The Deed for this parcel contains the Single Detached Dwelling Restriction and the Prohibited Uses Restriction;

   c. The Deed for this parcel does not contain the Setback Restriction; and

   d. This parcel is entirely within the boundaries of the 736 Delaware Property.

19. By Deed dated April 8, 1936 and recorded in Lehigh County Deed Book Vol. 558, Page 133, the owner of the Original Tract, Truman M. Dodson, and his wife, Florence C. Dodson, conveyed to Charles Millard Dodson out of the Original Tract a 66.67 foot by 100 foot rectangular parcel fronting on Delaware Avenue. With respect to this conveyance:

   a. This parcel occupied the southern one-third (66.67 feet) of the total Delaware Avenue frontage of the Original Tract (said total frontage being 200 feet);

   b. The Deed for this parcel contains the Single Detached Dwelling Restriction and the Prohibited Uses Restriction;

   c. The Deed for this parcel does not contain the Setback Restriction; and

   d. This parcel is partially within the boundaries of the 736 Delaware Property.

20. Following Truman Dodson's death in 1941, the three lots along Delaware Avenue which had been conveyed in 1935 and 1936 were reacquired by the Trustees under the will of Truman Dodson, such that these three properties were again held by a common owner by 1943.

21. The following Deeds conveyed the three lots along Delaware Avenue to the Executors and/or Trustees under the will of Truman Dodson in 1942 and 1943, and the Deeds for each of these conveyances contain the Single Detached Dwelling Restriction and the Prohibited Uses Restriction, but they do not contain the Setback Restriction. These Deeds are:

   (i) Lehigh County Deed Book Vol. 615, Page 300, dated April 10, 1942, from Truman W. Dodson, Jr., et ux. to Florence Casey Dodson, et al.;

(ii)     Lehigh County Deed Book Vol. 616, Page 347, dated April 7, 1942, from Charles Dodson et ux. to Florence Casey Dodson, et al.; and

(iii)     Lehigh County Deed Book Vol. 621, Page 293, dated February 1, 1943, from John E. Dodson, et ux. to Florence Casey Dodson, et al.

22. The two existing lots along Delaware Avenue which occupy the entire Delaware Avenue frontage of the Original Tract were first laid out and described in the following two Deeds:

A. A Deed recorded at Vol. 844, Page 688, dated March 7, 1955, from the Trustees under the will of Truman M. Dodson to Theodore F.M. Gray and Louise H. Gray, husband and wife (conveying Tract No. 1 of the 736 Delaware Property); and

B. A Deed recorded at Vol. 902, Page 675, dated August 7, 1957 (conveying 725 Fiot Street).

The Deed at Vol. 844, Page 688, dated March 7, 1955 (Tract No. 1 of the 736 Delaware Property) does not reference the 1920 Deed restrictions. The Deed at Vol. 902, Page 675, dated August 7, 1957 (725 Fiot Street) does not recite the 1920 Deed restrictions, but does state, "Under and subject to certain building restrictions of record."

23. Tract 2 of the 736 Delaware Property, which tract has street frontage only on Fiot Street, was first laid out and described by Deed at Vol. 910, Page 46, dated December 2, 1957 from the Trustees under the will of Truman M. Dodson to Theodore F.N. Gray. Prior to 1957, this property did not exist as a separate lot of record, and the 1957 deed creating this lot does not reference the 1920 Deed restrictions.

24. The next deed in the chain of title of the 736 Delaware Property is that dated September 11, 1963 from The First National Bank and Trust Company of Bethlehem, Executor of the Estate of Theodore F.N. Gray, to Robert C. Smith and Irene E. Smith, husband and wife, recorded at Deed Book Vol. 1046, Page 79. This deed does not reference the 1920 Deed restrictions.

25. The current deed in the chain of title of the 736 Delaware Property, the June 20, 2006 Deed from Irene E. Smith to 736 LLC, does not reference the 1920 Deed restrictions.

26. The August 12, 1965 Deed from Frank S. Capuano and Josephine Capuano to John Capuano and Mary Capuano (751 Seneca Street) does not reference the 1920 Deed restrictions.

27. The Deed dated May 15, 1990 from Lawrence G. Applegate and Diane L. Applegate, husband and wife, to Maria D. Monteiro (747 Seneca Street) does not reference the 1920 Deed restrictions.

28. The October 19, 2015 Deed from Anthony M. Poroszlai, Jr. to Saint Luke's Hospital of Bethlehem, PA (763 Seneca Street) does not recite the 1920 Deed restrictions, but does state, "Under and subject to all covenants, conditions, easements and restrictions as appear of record."

29. The September 30, 1976 Deed from Joseph J. Klo to Michael S. Klo (725 Fiot Street) does not recite the 1920 Deed restrictions, but does state, "Under and subject to certain building restrictions of record."

30. The residence on the 736 Delaware Property was constructed in or about 1935.

31. The residence on the Klo Property at Delaware Avenue and Fiot Street (725 Fiot) was constructed in or about 1957.

32. By Deed dated January 2, 1923, and recorded in Lehigh County Deed Book Vol. 356, Page 247, the owner of the Original Tract, Truman M. Dodson, and his wife conveyed to Patsy Tallarico, Joseph Tallarico, and Guissippi Tallarico a 40 foot by 85 foot rectangular parcel out of the Original Tract; this parcel was at the northerly corner of Seneca and Fiot Streets, and extended 40 feet along Seneca Street and 85 feet along Fiot Street. This parcel is part of the current St. Luke's Property (763 Seneca Street).

33. The aforementioned January 2, 1923 Deed for the 40 foot by 85 foot rectangular parcel at the northerly corner of Seneca and Fiot Streets repeats the following restrictive covenant language from the November 27, 1920 Deed for the Original Tract:

    *It is further covenanted and agreed that no bone boiling establishment, blacksmith shop, tallow or starch manufactory, liquor saloon or place for the sale of intoxicating liquors, public automobile garage, or auto or machine repair shop shall ever be erected or conducted on the herein described premises or any part thereof.*

34. Beginning in 1946, the Trustees under the Will of Truman Dodson began conveying lots out of the commonly held property owned by the trust.

35. The Trustees first conveyed a lot along Seneca Street to Dorothy Lisle in 1946. This deed does not reference the 1920 Deed restrictions.

36. The Capuanos' Property (located at 751 Seneca Street) in its current dimensions was first laid out and described in a Deed from Frank S. Capuano and Josephine Capuano, husband and wife, to John Capuano and Mary Capuano, husband and wife, dated

8

August 12, 1965 and recorded at Lehigh County Deed Book Vol. 1076, p. 405. This Deed does not reference the 1920 Deed restrictions.

37. The Monteiro Property (located at 747 Seneca Street) in its current dimensions was first laid out and described in a Deed from Frank S. Capuano and Josephine Capuano, husband and wife, and John Capuano and Mary Capuano, husband and wife, to Frank S. Capuano and Josephine Capuano, husband and wife, dated August 12, 1965 and recorded at Lehigh County Deed Book Vol. 1076, p. 407. This Deed does not reference the 1920 Deed restrictions.

38. The St. Luke's Property (763 Seneca Street) actually consists of two separate tracts acquired by St. Luke's predecessor in title in separate deeds, one dated January 2, 1923 and the other dated December 11, 1959. As set forth in Joint Stipulation of Fact No. 31, said January 2, 1923 Deed contains the restrictive covenant language described therein. The Deed in the chain of title subsequent to said January 2, 1923 Deed, which is dated June 18, 1958 and recorded in Deed Book Vol. 921, Page 485, does not reference the 1920 Deed restrictions. The December 11, 1959 Deed does not reference the 1920 Deed restrictions.

39. The property owners abutting the 736 Delaware Property to the north and south and fronting on Delaware Avenue are not litigants in this matter; both of these abutting properties contain single family residential dwellings thereon which are used as residences.

40. A residence was constructed on the 736 Delaware Property in 1935 which a witness for the Defendant would testify did not comport with the 50 foot setback from Delaware Avenue found in the 1920 deed restrictions. That residence was demolished by Defendant in 2015.

41. The lot known as 725 Fiot Street, at the corner of Fiot Street and Delaware Avenue, was created in a rectangular configuration which is 53.5 feet along Delaware Avenue and 125 feet along Fiot Street.

42. A residence was constructed at 725 Fiot Street in or about 1957 which a witness for the Defendant would testify did not comport with the 50 foot setback from Fiot Street found in the 1920 Deed restrictions. That residence still exists.

43. On June 23, 2006, Crest Abstract faxed to Attorney Terrinoni 19 pages titled "Important Fax Memo," which stated on the Fax Cover Sheet in the reference section: "Restrictions for 736 Delaware."

44. Prior to Defendant purchasing the 736 Delaware Property, its attorney was made aware of - - and acknowledged being made aware of, by having his office note on the June 23, 2006, facsimile transmission alerting him to the existence of "restrictions for

9

736 Delaware," "Ok per VAT" -- the existence of the 1920 Deed restrictions in the chain of title of the 736 Delaware Property.

45. 736 LLC sought and obtained Borough of Fountain Hill Zoning Hearing Board approval in 2006 to use the 736 Delaware Property and the existing 1935 single family dwelling thereon with a two-story addition for medical office purposes (the "2006 Approval").

46. 736 LLC again appeared before the Zoning Hearing Board in 2007 and obtained variances regarding signage and off-street loading (the "2007 Approval").

47. Neither the 2006 Approval nor the 2007 Approval were appealed.

48. The 736 Delaware Property was not developed following the 2007 Approval.

49. St. Luke's first made known its intent to try to enforce the 1920 Deed restrictions by letter from St. Luke's counsel dated October 14, 2015.

50. St. Luke's did not obtain the St. Luke's Property until October 19, 2015.

51. At a Special Meeting-Public Hearing of Borough Council of Fountain Hill held on July 23, 2008 regarding a new Zoning Ordinance, during the public comments portion of the meeting, Dave Johnson of St. Luke's Hospital commented that the new Zoning Ordinance addresses the needs of the Hospital.

52. Defendant again proceeded to the Zoning Hearing Board in 2014, which confirmed the appropriateness of a medical office use for the 736 Delaware Property, determined that the residence then on the 736 Delaware Property "would not be feasible or reasonably reused," that it was unsuitable for the intended medical office use, and could be razed (the "2014 Approval").

53. The medical office building proposed by Defendant in 2014 had a smaller footprint than the one proposed in 2007 as an extension of the then-existing home on the 736 Delaware Property.

54. The 2014 proposed medical office building is one story, the building originally approved in 2006 was a two-story.

55. 736 LLC applied for land development approval in 2015 for a new medical office building on the 736 Delaware Property to accommodate Dr. Salib's medical practice.

56. Land development approval was granted by the Borough of Fountain Hill Planning Commission on May 11, 2015, pursuant to Resolution 2015-00.

57. The Plaintiffs did not appeal the grant of land development approval.

58. In furtherance of its approvals, and as a requirement for the commencement of construction, Defendant entered into a series of agreements with the Borough, including an Improvements, Security, Indemnification and Maintenance Agreement, and a Stormwater Best Management Practices Operations and Maintenance Agreement, both of which are now recorded in the Office of the Recorder of Deeds, and have bound the 736 Delaware Property since before St. Luke's gave notice of its intention to enforce the 1920 Deed restrictions.

59. In the course of the land development process, 736 Delaware sought two additional zoning variances, one in August 2014 and the other in October 2014, both of which were denied.

60. Plaintiffs John Capuano and Donna Capuano were present at the August 2014 Zoning Hearing Board meeting involving the 736 Delaware Property; St. Luke's was represented by legal counsel at that hearing; and both the Capuanos and St. Luke's objected to the requested variances at that meeting.

61. Plaintiff St. Luke's was represented by legal counsel at the October 2014 Zoning Hearing Board meeting involving the 736 Delaware Property, and St. Luke's objected to the requested variances at that meeting.

62. Final land development approval was obtained in August 2015 without requiring the variances, which were denied in 2014.

63. The land development approved was for a medical office building.

64. The medical office building use is consistent with the use criteria mandated in the Borough of Fountain Hill's Residential-Office (RO) zoning district.

65. St. Luke's first made known its intent to try to enforce the 1920 Deed restrictions by letter from St. Luke's counsel dated October 14, 2015.

66. The Borough of Fountain Hill rezoned the Delaware Avenue area which includes most of the 736 Delaware Property from Medium High Density Residential to Residential-Office, where offices are permitted.

CONCLUSIONS OF LAW

1. "The persons initially entitled to enforce the obligation of a promise respecting the use of land are the promisee and such third persons as are also beneficiaries of the promise."

11

> *Mariner v. Rohanna*, 371 Pa. 615, 92 A.2d 219 (1952) quoting *Restatement of the Law of Property* § 541.

2. The promisees of the 1920 restrictive covenants were the Original Grantors of the Original Tract.

3. The language of the restrictive covenants set forth in the deeds to Plaintiffs' land did not provide for the owners of Plaintiffs' land to be third-party beneficiaries of the restrictive covenant.

4. The surrounding circumstances of a conveyance of land can establish that owners of land other than the grantor and conveyee are third-party beneficiaries to a restrictive covenant where the restrictive covenant was imposed to carry out a general scheme for the development of real property. *Fey v. Swick*, 308 Pa. Super. 311, 454 A.2d 551 (1982) citing *Korn v. Campbell*, 192 N.Y. 490, 85 N.E. 687 (1908).

5. The conveyance of the Original Tract to Truman M. Dodson in 1920 was conveyed as one parcel.

6. The 1920 Deed did not establish a general scheme for the development of real property.

7. The subsequent transfer of Original Tract parcels never established a general scheme or development of the land.

8. Plaintiffs were not intended third-party beneficiaries of the restrictive covenant.

9. Plaintiffs lack standing to enforce the restrictive covenant.

DISCUSSION

Plaintiffs filed their Amended Complaint on February 29, 2016, and asserted that 736 LLC's attempt to construct a commercial building was in violation of a 1920 restrictive covenant that only permitted a single detached dwelling house on the 736 Delaware Property. Plaintiffs sought equitable relief in the form of a declaration that 736 LLC's proposed commercial use and construction of a commercial building was in violation of the aforementioned restrictive covenant. Plaintiffs further requested relief barring, precluding, and enjoining 736 LLC from using the 736 Delaware Property for commercial purposes and from constructing any

12

commercial building thereon; and from using the 736 Delaware Property for any use other than a single detached dwelling house; and any additional relief, including reimbursement of legal fees and costs.

736 LLC answered Plaintiffs' Amended Complaint and filed New Matter and Counterclaims. First, 736 LLC asserted that the Plaintiffs lack standing because none of the Plaintiffs' properties were beneficiaries of the single detached dwelling house restriction. Next, 736 LLC asserted that St. Luke's bought the St. Luke's Property only to thwart 736 LLC's building plans and that St. Luke's actions in opposing the proposed use of the 736 Delaware Property were done in bad faith and with unclean hands. In addition, 736 LLC asserted that St. Luke's was guilty of laches because it had constructive notice of its plan to construct a medical office since 2006, but did not notify 736 LLC of its objection until 2015. 736 LLC also asserted that in the 95 years since the deed restrictions were put in place, the character of the neighborhood where the Property is located has changed dramatically, making the restriction obsolete.

736 LLC requested damages because it asserted that Plaintiffs' actions were taken with ill motive, bad faith, and with unclean hands and constituted laches. 736 LLC further requested a declaratory determination that the use of the 736 Delaware Property for medical services is not precluded by the 1920 Deed restrictions; and, further, that the building restrictions in the 1920 Deed are void and of no force and effect because: they have not been enforced; their intended purpose no longer exists; the character of the neighborhood has substantially changed; the restrictions are not enforceable by the Plaintiffs; Parcel 2 of the 736 Delaware Property is

13

unencumbered by the single detached dwelling house covenant because it does not front on Delaware Avenue and is not within 120' of the Delaware Avenue intersection.

The first issue we address is whether the Plaintiffs have standing to enforce the restrictive covenant they assert exists on the 736 Delaware Property.

"The persons initially entitled to enforce the obligation of a promise respecting the use of land are the promisee and such third persons as are also beneficiaries of the promise." *Mariner v. Rohanna*, 371 Pa. 615, 92 A.2d 219 (1952), quoting *Restatement of the Law of Property* § 541.

In this matter, Plaintiffs were not promisees of the covenant. The Original Tract conveyed in 1920 included the 736 Delaware Property, the St. Luke's Property, the Capuanos' Property, and the Monteiro Property. The 1920 Deed was conveyed from James M. Degnan and Katherine M. Degnan, husband and wife, and Eldredge P. Wilbur and Lilian L. Wilbur, husband and wife, to Truman M. Dodson. Truman M. Dodson is the promisor in this scenario, the party making the promise to uphold the restrictive covenant; the Original Grantors are the promisees, the parties on the receiving end of the promise. As such, the Plaintiffs do not have any right to enforce the restrictive covenant as promisees of the 1920 restrictive covenant.

Therefore, in order to determine if the Plaintiffs have standing to pursue this litigation, it is necessary to determine if the Plaintiffs were intended third-party beneficiaries of the restrictive covenant. In other words, was the restrictive covenant imposed on the 736 Delaware Property for the benefit of land owned by St. Luke's, the Capuanos, and/or Ms. Monteiro? In making such a determination, we look at the terms of the restriction and/or to the situation of the parties and the surrounding circumstances to determine if there was a clear intention of the grantors to establish the restriction for the benefit of one of the owners in Plaintiffs' chain of title.

14

As the Court stated in *Mariner*:

[A] property owner, regardless of whether he is conveying an entire tract not a part of a plan of lots, or whether he is conveying one or several lots of a plan of lots, has the right to dispose of his property with a limited restriction on its use, however much the restriction may affect the value or the nature of the estate. *Cowell v. Colorado Spring Co.*, 100 U.S. 55, 2 L.Ed. 547; *Fanning's License*, 23 Pa. Super. 622, at page 627. The benefits of the restriction need not run to the grantor-promisee alone or to the owners of other lots in a plan of lots deeded by him. As in the case of other covenants, third parties may be made the beneficiaries of a restriction and may enjoin its breach so long as it is clearly shown that the covenant was for their benefit.

*Id.* at 618, 92 A.2d 221, citing *Restatement of the Law of Property* § 46.

In *Mariner*, the grantor along with five adjoining property owners filed a bill in equity to enjoin defendant from continuing to use his land as a junkyard. The restriction at issue prevented the grantee from, among other things, establishing any noxious or offensive trade such as the storing of second hand automobiles, "to the hurt, damage or annoyance of other adjoining property owners, who, by these presents, may have the right to enjoin or restrain the same." The language of the restrictive covenant clearly provided that the covenant was for the benefit of the adjoining landowners; accordingly, the adjoining landowners, as third-party beneficiaries, "were as much a part of the contract as if they had been described by name and address in the deed." *Id.* at 618, 92 A.2d 220-21.

In *Appeal of J.C. Grille, Inc.*, 181 Pa. Super. 456, 124 A.2d 659 (1956), J.C. Grille, Inc. had filed with the Pennsylvania Liquor Control Board an application to transfer a liquor license within the City of Philadelphia. The application was protested by persons residing in the vicinity of the premises to which the license was to be transferred. The Board refused the application; J.C. Grille, Inc. appealed, and the trial judge dismissed the appeal and sustained the order refusing the transfer. An appeal to the Superior Court was taken and the Court was asked to

15

decide whether nearby neighbors had the right to enforce a restriction on a building precluding the sale and consumption of alcohol. The restriction provided:

> [w]hereas it is the intent and purpose of the said Owners to impose upon the above described premises certain Building Restrictions *for the proper improvement and protection of the general neighborhood, and to provide proper and sufficient Commercial Area for the Service, Comfort and Convenience of said neighborhood*, the said Owners do and hereby declare that for a period of twenty years from the date hereof no Building shall be erected or occupied on the above described premises for the sale of Alcoholic or Spirituous Liquors from consumption on the premises…

*Id.* at 460-61, 124 A.2d at 662 (emphasis added). The Court stated:

> 'The right of a person not a party thereto to enforce in equity a restriction on the use of property depends on whether or not the restrictive covenant or agreement was imposed on the land owned by defendant for the benefit of the land owned by plaintiffs who are seeking to enforce the restriction; if so, equitable relief should be granted to the plaintiffs, if not plaintiff should be denied the equitable relief prayed. The question is determined largely by the intention of the parties, and it must appear from the terms of the grant or from the situation of the parties and the surrounding circumstances that it was the intention of the grantor, when inserting the restriction, to create a servitude or equity in the nature of an easement which would inure to the benefit of complainant's land and equitably be annexed as an appurtenance. A restriction imposed for the benefit of the owner of other property creating an equitable right in the nature of an easement in his behalf may be enforced in equity without regard to whether it is inserted by way of condition, covenant, or otherwise. Complainant's right does not rest on whether or not the restriction runs with the land, nor on privity of estate or contract, but there must be found somewhere the clear intent to establish the restriction for the benefit of the party attempting to restrain its enfringement, of which defendant must have either actual or constructive notice. Whether a restrictive covenant runs with the land is material in equity only on the question of notice; since, if it runs with the land, the covenant binds the owner regardless of knowledge, and if not, he is bound only if he took the land with notice'.

*Id.* at 463-64, 124 A.2d at 664, quoting 26 *C.J.S.* Deeds, § 167.

In affirming the lower court's dismissal of the appeal, the Court held that the protestants, who lived across the street and within the same block of the premises, were clearly beneficiaries of the agreement because they lived close enough to the premises to be considered part of the

16

general neighborhood. "It is for the benefit of all of them that the occupation and enjoyment of their respective dwellings be free from the annoyances inherent in the unlimited commercial use of the premises in violation of the agreement." *Id.* at 465-66, 124 A.2d at 664-65.

The 736 Delaware Property and its adjoining properties, including the St. Luke's Property, the Capuanos' Property, and the Monteiro Property were part of the Original Tract, which was encumbered by a restrictive covenant contained first in a deed dated November 27, 1920.[1] The restrictive covenant states in pertinent part as follows:

> It is expressly covenanted and agreed by and between the parties hereto that no buildings other than single detached dwelling houses to cost not less than Eight Thousand ($8,000) Dollars each, shall be erected along the Delaware Avenue frontage on the herewith described premises, nor shall the front walls of such dwellings approach the street curb line nearer than fifty (50') feet porches nearer than forty-one feet six inches (41'6"), not including the steps. The same restrictions apply to that part of the frontage on Fiot Street that lies within one hundred and twenty (120') feet of the Delaware Avenue intersection, with the exception of private garages for which there is no restriction as to the price or location.

The Original Tract also had the 1920 Deed Prohibited Uses Restriction, which prohibited a bone boiling establishment, blacksmith shop, tallow or starch manufactuory, liquor saloon or place for the sale of intoxicating liquors, public automobile garage, or auto or machine repair shop to be erected or conducted on the premises. Outhouses or chicken coops were also prohibited on Delaware Avenue Property.

By deed dated November 1, 1935, the owner of the Original Tract, Truman M. Dodson, and his wife, Florence C. Dodson, conveyed to John E. Dodson and Evelyn M. Dodson, husband and wife, a parcel that occupied the middle one-third of the total Delaware Avenue frontage of

---

[1] This conveyance was from James M. Degnan and Katherine M. Degnan, husband and wife, and Eldredge P. Wilbur and Lilian L. Wilbur, husband and wife, to Truman M. Dodson.

the Original Tract. Said parcel is now entirely within the boundaries of the 736 Delaware

Property. The November 1, 1935 Deed contains the following restriction:

> It is expressly covenanted and agreed by and between the parties hereto that no buildings other than single detached dwelling houses to cost not less than Eight Thousand Dollars ($8,000.00) each, shall be erected on the herein described premises.

The November 1, 1935 Deed also contained the Prohibited Uses Restriction; but no

longer contained the Setback Restriction.

By deed dated April 8, 1936, the owner of the Original Tract, Truman M. Dodson, and

his wife, Florence C. Dodson, conveyed to Truman M. Dodson, Jr. the northern one-third of the

total Delaware Avenue frontage of the Original Tract. Said parcel is now entirely within the

boundaries of the 736 Delaware Property. Like the property conveyed on November 1, 1935, the

Deed for this parcel contains the Single Detached Dwelling Restriction and the Prohibited Uses

Restriction, but does not contain the Setback Restriction.

Also by deed dated April 8, 1936, the owner of the Original Tract, Truman M. Dodson,

and his wife, Florence C. Dodson, conveyed to Charles Millard Dodson the southern one-third of

the total Delaware Avenue frontage of the Original Tract. Said parcel is now partially within the

boundaries of the 736 Delaware Property. This property similarly contains the Single Detached

Dwelling Restriction and the Prohibited Uses Restriction, but does not contain the Setback

Restriction.

Following Truman Dodson's death in 1941, the three lots along Delaware Avenue

conveyed in 1935 and 1936 were reacquired by the Trustees under Truman Dodson's will and

were again held by a common owner by 1943. The three deeds conveying those lots to the

Executors and/or Trustees under the Truman Dodson's will contained the Single Detached

18

Dwelling Restriction and the Prohibited Uses Restriction, but did not contain the Setback Restriction.

The remaining deeds in the 736 Delaware Property's chain of title include:

1. Deed dated March 7, 1955, from the Trustees under the will of Truman M. Dodson to Theodore F.M. Gray and Louise H. Gray, husband and wife, conveying Tract 1 of the 736 Delaware Property. No reference to the 1920 Deed Restrictions is set forth in this Deed.

2. Deed dated December 2, 1957, from the Trustees under the will of Truman M. Dodson to Theodore F.N. Gray, conveying for the first time Parcel 2 of the 736 Delaware Property which has frontage only on Fiot Street. No reference to the 1920 Deed Restrictions is set forth in this Deed.

3. Deed dated September 11, 1963, from The First National Bank and Trust Company of Bethlehem, Executor of the Estate of Theodore F.N. Gray to Robert C. Smith and Irene E. Smith, husband and wife. No reference to the 1920 Deed Restrictions is set forth in this Deed.

4. Deed dated June 20, 2006, from Irene E. Smith to 736 LLC. No reference to the 1920 Deed Restrictions is set forth in this Deed.

After careful consideration of all of the deeds in the 736 Delaware Property's chain of title, it becomes apparent that the specific language to examine regarding the restrictions is the language in the 1920 Deed setting forth the 1920 Deed Single Detached Dwelling Restriction, the Setback Restriction, and the 1920 Deed Prohibited Uses Restriction. In addition, the language in the 1935 Deed setting forth the Single Detached Dwelling Restriction and the

19

Prohibited Uses Restriction, which language is subsequently used in the transfer of the property, must also be examined. The specific restrictions used in the pertinent deeds are silent as to any language that would provide a third-party benefit to the properties currently owned by the Plaintiffs. Unlike the *Mariner* restriction that referred to the specific rights of adjoining property owners or the *J.C. Grille, Inc.* restriction that provided for the protection of the general neighborhood, the restrictions at issue do not provide for any third-party beneficiaries. The surrounding property owners are simply not mentioned in any manner in the restrictions. Therefore, we conclude that the language of the restrictions did not contemplate the Plaintiffs as third-party beneficiaries to the single detached dwelling restriction.

The remaining inquiry is whether the evidence establishes that the situation of the parties or the surrounding circumstances during the transfer of the property was such that a clear intention existed as to make Plaintiffs third-party beneficiaries to the restriction. Restrictive covenants may be enforced by other than the grantor or covenantee where they are imposed to carry out a general scheme for the development of real property. *Fey v. Swick*, 308 Pa. Super. 311, 454 A.2d 551 (1982), citing *Korn v. Campbell*, 192 N.Y. 490, 85 N.E. 687 (1908).

*Restatement of the Law of Property § 541, Comment E*, states in part:

> ... in the absence of specific language pointing out the intended beneficiaries of the promise, as is often the case, the proof must rest almost entirely or in large part upon the reasonable inferences from the circumstances under which the promise was made. One of the circumstances tending to show the necessary intention is the fact that the land was included in a general plan of development of a certain area which plan was being pursued by the promisee at the time the promise was made. If the whole of an area was being developed by the promisee in accordance with a general plan of development, the inference may and commonly will arise that the owner of each part of the land included within the plan is intended to have the benefit of the promises made by the owners of all of the other parts in so far as they are in conformity with the general plan..."

20

Pursuant to the language set forth in the above comment, we look to see whether the whole of an area was being developed by the promisee in accordance with a general plan of development. Turning again to the transfer of the Original Tract in 1920, the promisees were Mr. and Mrs. Degnan and Mr. and Mrs. Wilbur. The 1920 Deed provided, in part, that "no buildings other than single detached dwelling houses to cost not less than Eight Thousand $8,000 Dollars each, shall be erected along the Delaware Avenue frontage on the herewith described premises." The 1920 Deed also prevented outhouses and chicken coops on Delaware Avenue property. But the Original Tract included property other than that with land fronting Delaware Avenue. It included Parcel 2 of the 736 Delaware Property, which fronts Fiot Street, and it included the St. Luke's Property, the Capuanos' Property, and the Monteiro Property, which all front Seneca Street. Those properties were not restricted by the single detached dwelling house restriction because they do not front Delaware Avenue. In fact, pursuant to the 1920 Deed, the remaining parcels of land in the Original Tract, which included any property that did not front Delaware Avenue or violate the setback requirements related to Delaware Avenue, could have presumably erected any building and conducted any business on the property that did violate the use restriction.

The fact that other parcels of the Original Tract could have been developed for commercial business is confirmed by the prohibited uses restriction in the 1920 Deed. The prohibited uses restriction provides: "[i]t is further covenanted and agreed that no bone boiling establishment, blacksmith shop, tallow or starch manufactory, liquor saloon or place for the sale of intoxicating liquors, public automobile garage, or auto machine repair shop shall ever be erected or conducted on the herein described premises or any part thereof." As long as the use

21

was not from the prohibited list, the parcels in the Original Tract that did not front Delaware Avenue could have erected or conducted something other than a single detached dwelling house. To find otherwise, would remove all meaning from the 1920 Deed Prohibited Uses Restriction.

Because the whole of the area was not intended by the promisees as a general plan or scheme of development, we find that the subsequent owners of lots not fronting Delaware Avenue were never intended to have the benefit of the promises made by the owners of parcels facing Delaware Avenue because there was never conformity with a general plan.

This lack of conformity only grew with time as the three Delaware Avenue lots deeded from Truman Dodson and his wife were deeded back to the Trustees under the will of Truman Dodson in 1942 and 1943. After the Truman Dodson Trustees owned the land, the Delaware Avenue frontage of the Original Tract was divided into two properties: Tract 1 of the 736 Delaware Property and 725 Fiot Street, whose owner is not a party to this action. The remaining five properties of the Original Tract (Tract 2 of the 736 Delaware Property, the Capuanos' Property, the Monteiro Property, and the two parcels that make up the St. Luke's property) do not have the single detached dwelling restriction. Again, we find that conveyances with such limited conformity do not establish a general plan or scheme of development. As such, Plaintiffs cannot assert that they were intended to have the benefit of the promises made by the owners of the two properties abutting Delaware Avenue. The Plaintiffs were not intended third-party beneficiaries of the restrictive covenant at issue and lack standing to enforce the single detached dwelling restriction in an attempt to prevent 736 LLC from constructing a medical building.

22

*St. Luke's Hospital of Bethlehem, Pennsylvania, John Capuano, Donna Capuano, and Maria Monteiro v. 736 Delaware Associates, LLC; Case No.: 2015-C-3223*

Because we find that Plaintiffs lack standing to enforce the restrictive covenant at issue, we deny their request for declaratory judgment.

DATE: *December 8-2016*                    BY THE COURT:

CAROL K. McGINLEY, J.

23

IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
CIVIL DIVISION – LAW

ST. LUKE'S HOSPITAL OF BETHLEHEM,      :
PENNSYLVANIA, JOHN CAPUANO,            :
DONNA CAPUANO, and MARIA MONTEIRO,     :
               Plaintiffs     :
                                       :      No. 2015-C-3223
          v.                         :
                                       :
736 DELAWARE ASSOCIATES, LLC,          :
             Defendant      :
                                       :

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

APPEARANCES:

        Kevin T. Fogerty, Esquire
        For Plaintiffs

        Blake C. Marles, Esquire
        For Defendant

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SUPPLEMENTAL DECISION

CAROL K. McGINLEY, J.

This Decision is written to supplement our original Decision dated December 8, 2016, in

which we held that Plaintiffs St. Luke's Hospital of Bethlehem, John Capuano, Donna Capuano,

and Maria Monteiro (Plaintiffs) lacked standing to enforce a restrictive covenant in the above-

47

*St. Luke's Hospital of Bethlehem, Pennsylvania, John Capuano, Donna Capuano, and Maria Monteiro v. 736
Delaware Associates, LLC; Case No.: 2015-C-3223*

captioned matter.[1] In our Decision, we failed to rule on Defendant 736 Delaware Associates,

LLC's (Defendant) request for attorneys' fees, expenses, and costs; we further did not address

Defendant's alternate defenses pursuant to equitable theories that may have barred Plaintiffs

from enforcing the restrictive covenant.

Defendant asserted in its Counterclaim that it was entitled to attorneys' fees, expenses,

and costs pursuant to 42 Pa.C.S.A. § 2503, which provides in part:

> The following participants shall be entitled to a reasonable counsel fee as part of
> the taxable costs of the matter:
> ...
> (7) Any participant who is awarded counsel fees as a sanction against another
> participant for dilatory, obdurate or vexatious conduct during the pendency of a
> matter.
> ...
> (9) Any participant who is awarded counsel fees because the conduct of another
> party is commencing the matter or otherwise was arbitrary, vexatious or in bad
> faith.

42 Pa.C.S.A. § 2503(7) and (9).

> "The relentless pursuit of a claim which plainly lacks legal merit warrants an
> award of counsel fees." *Miller [v. Nelson]*, 768 A.2d [858] at 862 [Pa.Super.
> 2001] (citation omitted). "A suit is vexatious if brought without legal or factual
> grounds and if the action served the sole purpose of causing annoyance." *Id.* "An
> opponent's conduct has been deemed to be 'arbitrary' within the meaning of the
> statute if such conduct is based on random or convenient selection or choice
> rather than on reason or nature." *Berg v. Georgetown Builders*, 822 A.2d 810, 816
> (Pa.Super.2003) (citation omitted).

*In re Barnes Found.*, 2013 Pa. Super. 145, 74 A.3d 129, 136 (2013).

Defendants argue that it was entitled to statutory relief because Plaintiffs' instituted this

suit in an attempt to delay development and to escalate the development and construction costs

---

[1] The issues addressed in this Supplemental Decision were raised in Defendant's Cross-Motion for Post-Trial Relief
and Motion for Sanctions of Defendant, 736 Delaware Associates, LLC, filed with the Clerk of Judicial Records –
Civil Division on December 30, 2016.

2

*St. Luke's Hospital of Bethlehem, Pennsylvania, John Capuano, Donna Capuano, and Maria Monteiro v. 736
Delaware Associates, LLC; Case No.: 2015-C-3223*

associated with the 736 Delaware Avenue property in an attempt to obstruct Defendant's plans to open a medical office building in close proximity to St. Luke's Hospital's Bethlehem campus. Defendant further argues that it was entitled to statutory relief because Plaintiffs waited until Defendant completed the land development process, and incurred all related expenses, before the above-captioned matter was filed.

We have carefully reviewed the evidence presented on this subject and do not find that the filing of this suit was either arbitrary, vexatious, or in bad faith as to warrant the award of counsel fees. The case at issue had legitimate legal issues that were properly raised. The timing of the suit was not improper and does not warrant sanctions.

Finally, we supplement our Decision to state that Defendant's alternative theories of recovery, i.e., the equitable doctrines of unclean hands and laches, were not reached because those theories were defenses to substantive issues that were never ruled on. The merits of Plaintiffs' claims were never ripe for resolution; therefore, the responsive defenses were not before this court for disposition.

DATE: *January 17, 2017*

BY THE COURT:

_____
CAROL K. McGINLEY, J.

3